[Crim. No. 2917.   Third Dist.   Apr. 9, 1959.]

THE PEOPLE, Respondent, v. SERELDO PEREZ,
Appellant.

Michael & Papas for Appellant.

No appearance for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment of conviction of grand theft and from the order denying his motion for a new trial.

The record shows that one Emedio Ramierez, a 76-year-old laborer, had received and cashed a Social Security check for $420. He left $250 for safe keeping with the owner of the liquor store where he cashed the check and took the balance with him. Thereafter Ramierez went to the Mission Tavern in Merced, had a few beers, watched a card game, loaned a friend $30 and talked to defendant. Around 10 p. m. defendant said to Ramierez, ''Let's go to the hotel, I have some girls.'' Defendant had seen Ramierez's money on the occasion of the $30 loan. The two went to the Central Hotel where defendant registered Ramierez under the name of Perez, telling the clerk that Ramierez was his father. He was given room 19 which adjoined the one occupied by defendant and his common law wife. Ramierez entered the room with the woman and remained there approximately an hour, resting on the bed and dozing lightly. Defendant was not in the room during this time. While Ramierez was in the room with the woman he took off his shoes and placed his wallet in them. He was certain no one touched his wallet during this time. Also, during this time, the hotel clerk heard someone pacing the hallway and, upon investigation, saw defendant outside room 19 and heard him say, ''Now stay in the bed, pop.'' Defendant told the clerk that Ramierez was his father; that Ramierez had been sick for a long time; that he was going to try to get him to go back to Sacramento where defendant's mother was; that Ramierez wanted to go to Sacramento; and that, ''He has got some money on him . . . and there is some people up there trying to get it off of him.'' Subsequently all three departed in a taxi, ostensibly for the Torino Hotel. Upon arriving at that hotel, Ramierez said he was going home. Defendant and the woman suggested that they accompany him, but Ramierez said he wanted to go alone. Eventually the three left together. Shortly after arriving at his home Ramierez bent over to pick up a magazine from the floor. As he did so he felt his wallet being taken out of his pocket and then saw it in the woman's hands. Defendant was standing three or four feet away from him at the time. Ramierez said he was going to call the police and left for his nextdoor neighbor's house to use the telephone. Upon returning to his own home he saw defendant and the woman leaving. Ramierez ran after them and grabbed the woman but was pushed away by defendant. The next

morning he found his wallet on the ground with only the receipt in it for the money he had left with the liquor store proprietor. There was approximately $90 in his wallet when the three went to his home.

Defendant and the woman returned to the Central Hotel, but upon seeing a police car in front left without obtaining their belongings and took a bus to Stockton.

At the trial defendant testified that he had taken Ramierez to the Central Hotel at Ramierez's request; that Ramierez himself asked defendant to register him as his father; and that Ramierez had invited him and the woman to his home. Defendant denied that any money had been taken from Ramierez. He further denied that he had made the statement to the room clerk that someone was trying to get money from Ramierez, and also denied the truth of Ramierez's statements regarding the events that took place at Ramierez's home, and stated that he and the woman left his home because Ramierez had been drinking too much.

Defendant contends (1) that the evidence is insufficient to establish that he was a principal in the commission of the offense; (2) that the trial court committed error in admitting evidence of the attempt of defendant's brother to suppress the testimony of the complaining witness; and (3) that the trial court committed error in allowing the police officer to testify to the statement he made to the complaining witness.

Section 487 of the Penal Code states: "Grand theft is theft committed in any of the following cases: . . . 2. When the property is taken from the person of another . . ." Section 31 thereof provides that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid or abet in its commission, are principals in any crime so committed.

It is well settled that the question of whether or not a person who is shown to have been present at the time and place of the commission of a crime has aided and abetted therein, is one of fact for the jury to decide from all the circumstances proved. (*People* v. *Woodward,* 45 Cal. 293 [13 Am.Rep. 176] ; *People* v. *Kauffman,* 152 Cal. 331 [92 P. 861] ; *People* v. *Silva,* 143 Cal.App.2d 162 [300 P.2d 25].) While the record in the instant case discloses circumstantial evidence from which the jury could find defendant guilty of the requisite participation in the crime charged, it cannot be said that such evidence presents a strong case for the prosecution.

The testimony which forms the basis of defendant's second

contention was given by the prosecuting witness and was admitted over the vehement objections of defense counsel. It began with a question by the district attorney that if, subsequent to the arrest of defendant, the witness had received a visit "from the defendant or any of his relatives as to the testimony you were to give?" to which he answered, "No." A like question was again asked. The objection of defense counsel was overruled and the district attorney continued: "Did you ever have a visit from either the defendant or his brother? A. Yes, his brother came to the house at 11:00 o'clock that night. I was in bed. . . . Q. And did he talk about this—is the brother here in Court today? Do you see him? A. Yes. Yes, he came and he told me he wanted me to go to Stockton . . . to talk to an attorney." Again counsel's objection was overruled. The witness answered: "Yes, he came over and he wanted me to go to Stockton to talk to an attorney, and that they were returning the money." Again counsel's objection was overruled and his request that the answer be stricken and the jury admonished to disregard the testimony was denied. Thereafter, in response to a query from the court as to the purpose of the testimony, the district attorney replied that it "is to show an attempt to get testimony of this witness changed." Again counsel objected and cited the statement of the district attorney as prejudicial misconduct. This time the court replied: "All this will go out due to the fact it hasn't touched upon the question of evidence so far. What he has said has nothing to do with what they are going to get in the way of evidence from him. They only wanted to go to Stockton. Did they tell you what they wanted you in Stockton for? A. They said they would return me some money and that they wanted me to say in Court that I had given his brother some money to buy some whiskey." Counsel again stated he would cite this as prejudicial misconduct and asked that the entire statement be stricken and the jury admonished to disregard it. In response to a further statement by counsel that the witness had not identified the man who talked to him as the defendant's brother, the court again queried the witness: "Was the man you were talking to this man's brother? A. Yes. He told me that the girl who was there, he take out in the——" Again counsel objected. The district attorney intervened, stating: "So we can identify him, your Honor, I will ask him this one question, if you will permit it. Is the man that talked to you present in Court here today? A. Yes, he is

right there, it is his brother." The court then addressed the district attorney: "You are asking that the evidence be permitted for the purpose of showing what? A. An attempt to influence the evidence and influence a witness, which——" Again counsel objected, demanding that the court declare a mistrial and that, if not, any further discussion should be held in the absence of the jury. In reply the court stated: "Your request is denied. Your objection is overruled. I will permit the evidence to stand as it is. It is a question for the jury to determine. This being the defendant's brother, who has come to this man to talk to him, whether or not he was attempting to influence this witness is a question for the jury. No, I will leave it stand as it is." The district attorney then continuing asked the witness: "Have you seen these two together, the two brothers? A. No, I don't know them. THE COURT: How do you know he is his brother? A. When they were in Stockton, a man told me there that they were brothers." Again defense counsel objected. The court interrupted, stating: "Did you ask this man who he was? A. No, I did not ask him. He is the one that talked to me first. Q. Did he tell you who he was? A. No, he just told me that his brother was in jail, and that he did not want him to go to the penitentiary." Again counsel objected, asking that the statement go out and the jury be admonished to disregard it. "THE COURT: It won't go out." The record shows further questioning of the witness by the court and the district attorney concerning the relationship. Finally the court stated: "Let's clear this question up. Call that man on the stand as soon as this man gets off. You may call him as your own witness if there is any question about his being a relative." Counsel stated there was no question of his being a relative, to which the court replied: "What are you objecting about then?"

■ There can be no question as to the admissibility of testimony relative to the efforts of a defendant to suppress testimony, since such actions show a consciousness of guilt. (*People* v. *Kendall*, 111 Cal.App.2d 204 [244 P.2d 418].) However, if the attempt is made by a third person outside of the presence of the defendant, it must appear that the third person is acting on behalf of the defendant in so doing, or is authorized by him to do so. The authority of the third person may be shown by circumstantial evidence. (*People* v. *Kendall, supra.*) In the instant case it is not denied that

the person identified by the complaining witness as the person making the offer was defendant's brother. ▮ But mere relationship, of itself, has never been held sufficient, respondent's contention to the contrary notwithstanding. (See *People* v. *Moore,* 70 Cal.App.2d 158 [160 P.2d 857].) In each of the cases cited by respondent there was additional evidence tending to connect the defendant with efforts to tamper with the witness.

▮ In *People* v. *Gilliland,* 39 Cal.App.2d 250 [103 P.2d 179], a somewhat similar situation was presented. There Gilliland was recalled on cross-examination and asked if he had not stated to the complainant's maid that if she would testify to certain facts, his codefendant Goetz, would pay her well. Following categorical denials by Gilliland, the maid was called as a witness and permitted to testify that such statements were made by him to her. The reviewing court held: "We have no hesitancy in saying that this testimony should not have been admitted as against appellant Goetz . . . The record before us is . . . barren of any evidence showing that appellant Goetz was connected with or authorized the efforts to tamper with the witness. Hence it was palpable error to receive in evidence as against appellant Goetz the acts and declarations of his former alleged coconspirator made without his proven knowledge, consent or presence . . ." (See also *People* v. *Weiss,* 50 Cal.2d 535 [327 P.2d 527].)

The prosecution in the Gilliland case, as here, argued in support of the judgment that even if it was error to have admitted such testimony, it was not prejudicial under section 4½, article VI of the Constitution. In view of the state of the record, it appears to this court that the judgment cannot be saved by said section. "We do not understand section 4½ of article VI of the Constitution as intended to mean that merely because the evidence may legally be able to stand up under the weight of the judgment, that is sufficient reason in all cases for refusing to set aside the judgment . . . If a defendant cannot be fairly convicted, he should not be convicted at all; to hold otherwise would be to provide ways and means for the conviction of the innocent. It cannot be gainsaid that you cannot inspire or preserve respect for the law by withholding its protection from those accused of crime. While deviation from the prescribed rules of law governing trial may result in justice for the particular defendant who is before the bar, it is dangerous to the community and its citizens." (*People* v. *Gilliland, supra,* p. 264.)

By reason of what we have heretofore said, it becomes unnecessary to discuss defendant's remaining contention.

The judgment and the order denying defendant's motion for a new trial are reversed.

Van Dyke, P. J., and Schottky, J., concurred.