301 So.2d 864 (1974)
STATE of Louisiana
v.
Alvin L. GRAVES.
No. 54507.
Supreme Court of Louisiana.
October 11, 1974.
Rehearing Denied November 6, 1974.
*865 Murphy W. Bell, Director, Woodson T. Callihan, Jr., Trial Attorney, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
By bill of information Alvin L. Graves was charged with armed robbery of Linda C. Moses in violation of Article 64 of the Criminal Code. After trial by jury Graves was found guilty as charged and sentenced to imprisonment for forty years without benefit of probation or parole. He was given credit for time served.
Six bills of exceptions were perfected. Defendant relies upon these bills to support his contention that he should be granted a new trial.

Bill 1
While making his opening statement to the jury the special prosecutor with the district attorney's office made this remark:
"Now, the evidence that we will bring, in addition to that which is eye witness testimony, will include Mr. Graves' efforts to obtain alibi witnesses or an alibi witness and intimidation in connection therewith. We will show I believe, flight from the State of Louisiana while he was out on bond in an effort to avoid being prosecuted...."
At this time defense counsel objected and moved for a mistrial arguing that the quoted remarks of the prosecutor were not correct. He asserted that when Graves absented himself, while out on bond after his arrest, his counsel advised the trial judge of his whereabouts. The trial judge then admonished the jury that the remarks of counsel in the opening statement were not evidence. He instructed the jury that only the testimony from the witness stand and physical objects offered during the trial could be considered as evidence.
After the jury was retired, argument of counsel ensued during which the prosecutor advised that he did not intend to convey to the jury the impression that Graves had endeavored to obtain an alibi witness. He meant, he said, to say the witness was obtained through the efforts of Graves' wife. When the argument was concluded, *866 the trial judge overruled the defense motion for a mistrial.
When the jury was recalled the prosecutor corrected his opening statement as follows:
"Now, as to this procurement of an alibi witness, we contend that Mr. Graves robbedcommitted an armed robbery of Household Finance on July 20, 1972. The state will attempt to show, will show that Mr. Graves' wife knowing that it was important to establish an alibi for Mr. Graves, specifically knowing it was important to establish that he was at his residence at 2:35 on July 20, 1972, procured a witness to testify on his behalf and bring out that he was in fact in his trailer on the afternoon of the robbery. That witness testified at a preliminary examination and she committed perjury and she is going to recant and change her testimony. Of course, all of this will be brought out during the examination and cross-examination of this particular witness. Mr. Graves, himself, did not procure this witness. His wife did."
Defense counsel argues that the remark of the prosecutor referring to the alleged intimidation of a witness is evidence of another crime, inadmissible at the trial because of its unduly prejudicial effect. He relies upon State v. Moore, 278 So.2d 781 (La.1973) and State v. Prieur, 277 So.2d 126 (La.1973). Generally speaking, these cases stand for the proposition that evidence of other crimes to prove knowledge, system or intent is inadmissible when its relevance is outweighed by its prejudicial effect. To support its position, the defense also urges that Article 770 of the Code of Criminal Procedure requires that a mistrial be ordered when a remark or comment, made within the hearing of the jury by the district attorney, refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
The authority relied upon is not pertinent here. Although an attempt to bribe or influence a witness is a criminal offense under Louisiana law, La.R.S. 14:118, an attempt by an accused in a criminal prosecution to induce a witness to testify falsely may be introduced in evidence against him. This evidence is admissible since it leads to an inference that, if admitted, it would operate unfavorably to the accused. Similarly, an attempt to fabricate evidence is receivable in a criminal prosecution as evidence of one's guilt of the main facts charged, such fabrication being in the nature of an admission. State v. Rohfrischt, 12 La.Ann. 382 (1857); Staggs v. State, 51 Ala.App. 203, 283 So.2d 652 (Ala.Cr.App.1973); Curtis v. State, 44 Ala.App. 63, 202 So.2d 170 (1967); Davis v. Commonwealth, 204 Ky. 601, 265 S.W. 10 (1924); People v. Hooper, 50 Mich.App. 186, 212 N.W.2d 786 (1973); State v. Ettenberg, 145 Minn. 39, 176 N.W. 171 (1920); State v. Christian, 245 S.W.2d 895 (Mo.1952); State v. Minton, 234 N.C. 716, 68 S.E.2d 844 (1952); State v. Reuschel, 312 A.2d 739 (Vt.1973); 29 Am.Jur.2d, Evidence, 292 & 293. Before such attempts are admissible, however, there must be some evidence to connect the accused therewith or to show that the attempt by a third person was made with the authorization of the accused. People v. Terry, 57 Cal.2d 538, 21 Cal.Rptr. 185, 370 P.2d 985 (1962), cert. denied, 375 U.S. 960, 84 S.Ct. 446, 11 L.Ed.2d 318 (1963).
Strictly speaking the first remark of the prosecutor was erroneous, for the alibi witness was not obtained by the accused but by his wife on his behalf. But this error was made harmless by the judge's admonition to the jury and by the prosecutor's correction of the error soon thereafter. La.Code Crim.Proc. art. 921. The close relation demonstrated between this accused and his wife convinces us that, though the evidence of her attempt to induce an alibi witness to lie is prejudicial, it is admissible as revealing consciousness of guilt on the part of the accused. See Curtis v. State, supra.
A second issue raised by this bill, but not urged in brief, concerns defense counsel's objection to the remark of the prosecutor *867 in his opening statement that defendant fled from the State while out on bond to avoid being prosecuted.
Evidence of flight may properly be considered by the jury in determining guilt. It, too, tends to show consciousness of guilt and becomes one of the circumstances from which guilt may be inferred. And this result obtains notwithstanding that the evidence of flight may disclose another crime. State v. Nelson, 261 La. 153, 259 So.2d 46 (1972); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Neal, 231 La. 1048, 93 So.2d 554 (1957).
Thus the prosecutor's remarks were permissible and properly within the scope of the opening statement in explanation of the evidence by which the State expected to prove the charge. La.Code Crim.Proc. art. 766.

Bills 2 and 3
At the inception of the trial a hearing was held on a defense motion to suppress the out-of-court identification of Graves as a result of photographic and physical lineups conducted by the police. Two grounds for suppression were alleged: 1) Suggestions were made by the investigating officers to the victims at the photographic lineup held the day after the robbery that the officers felt defendant was the person who perpetrated the robbery; and 2) these suggestions were the sole basis of the identification of Graves by these same victims at the physical lineup held thereafter.
The principal device employed to suggest Graves' identity, it is alleged, was that "persons present in the lineup were of such divergent height, age and description from the defendant so as to make the defendant appear to be the only person who vaguely resembled the victim's preconceived image of the perpetrator."
The State witness Craft was one of the victims who had identified Graves at both lineups. He was questioned on cross-examination about facts which pertained to the weight of his testimony identifying Graves. Specifically he was asked how long he observed the robber during the commission of the offense, to which the State objected. The objection was sustained, and Bill 2 was reserved.
In his ruling the judge observed that the motion to suppress is designed to ascertain whether the lineup was free of impermissible suggestion and in keeping with acceptable procedure. It could not be employed, he said, to delve into the weight of the victim's testimony identifying Graves, this being more properly reserved as the subject of interrogation before the jury during trial.
While Craft was testifying defense counsel again sought to question the witness on the subject of the accuracy of his identification of Graves. He was asked such questions as the age of the persons in the lineup, the length of their hair, color of their skin and whether they had facial hair. When the interrogation showed signs of being drawn out, the trial judge suggested that the picture of the lineup, which had been introduced in evidence, would speak for itself, whereupon the prosecutor objected to the line of questioning. The objection was sustained by reference to the judge's ruling on the same subject in connection with Bill 2. Bill 3 was reserved to this ruling.
Craft testified that both the photographic and physical lineups were uninfluenced by any suggestion on the part of the police. He described the methods employed in both lineups. His testimony was corroborated by Officer Gill of the Baton Rouge police who conducted both lineups. Graves' retained counsel was at the lineup, and he was allowed to select the participants from the prisoners incarcerated in the jail. No objection was made by either Graves or his counsel at that time to the manner in which the lineup was conducted. To the contrary, they indicated that the lineup was *868 was fair and reasonable. A photograph of the participants in the lineup is in the record and discloses them to be, to some extent, similar in height, weight and age. The similarity was sufficient to negative the conclusion that dissimilar types were included to suggest the identity of Graves.
Defense counsel had sought to question the witness as to the length of time he observed the perpetrator before, during and after the commission of the offense. The cases cited to sustain the contention that he was entitled to this information involve whether an in-court identification is based upon an independent source. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Moseley, 284 So.2d 749 (La.1973); State v. Newman, 283 So.2d 756 (La.1973); State v. Amphy, 259 La. 161, 249 So.2d 560 (1972); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Allen, 251 La. 237, 203 So.2d 705 (1967).
The issue before the court did not involve an in-court identification. The sole question on this motion to suppress was whether the photographic and physical lineups were impermissibly suggestive and thus improperly conducted. The in-court identification had not yet been made.
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel." La.R.S. 15:275.
These bills have no merit.

Bill 4
While Officer Gill was testifying at the hearing on the motion to suppress evidence of identification at the photographic and physical lineups, defense counsel asked him on cross-examination if certain information concerning the names, ages, heights, and weights of the various participants was contained in the officer's report of the physical lineup. When Officer Gill answered that this information was not in his report, the colloquy continued as follows:
"Q. Would you examine your report and see whether its anywhere in there?
A. (Witness complies).
MR. BLANCHE: Your Honor, I object to his requiring Mr. Gill to examine his report for this purpose. It's not relevant.
A. No. I didn't. All I put was the fact that he was a white male.
Q. That's all you put? You don't have their age?
A. No.
Q. Were these people made to say anything?
A. Yes, they were.
Q. What was it that they said?
A. Each of the participants in the lineup ...
Q. Is thisare you testifying from your own memory or from your report?
A. No, you wanted me to tell you from the report?
Q. Yes.
A. From the report?
Q. Yes.
A. Each of the participants were asked to say the following, starting with one, two, three, four, five, (numbers assigned to persons in the lineup) through five: lay on the floor; hurry up girl; I'll kill you; all of it; thats not all of it; all right, in the backone at a time. Each participant was required to say that."
*869 Following this testimony defense counsel moved to be allowed to examine the report, and the motion was denied. This bill was reserved.
Our holding in State v. Payton, 294 So.2d 211 (La.1974), is dispositive of the issue presented by this bill. There we said:
"The officer on cross-examination was asked about the address of an individual who had furnished information leading to the arrest of the defendant. The officer testified that the address was written on a rights waiver, and that the individual lived in the same house with another person involved in the crime. Thereupon, defense counsel asked whether the report was with the officer, and whether the officer used the report to refresh his memory. After the officer affirmatively answered the questions, defense counsel moved to inspect the report.
"The record clearly indicates that the officer only testified as to that which he actually knew and remembered. The officer used the report prior to trial to refresh his memory. The evidence admitted was his present testimony. There was no right of the defense to inspect the report. The bill is without merit."
Section 279 of Title 15 of the Revised Statutes also provides authority for this ruling, viz.:
"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."
In the context of the facts and circumstances giving rise to the trial judge's ruling, the case at bar is indistinguishable from the Payton Case. Defense counsel requested that the officer read from his report. Reference to the report was not prompted by any action of the State or the State's witness. Under these circumstances the defense is not entitled to demand a view of the report. Our ruling is consistent with the Payton Case.
This bill has no merit.

Bill 5
This bill was taken to the ruling of the trial judge which denied the motion to suppress evidence of the identifications of the defendant based upon the contention that the in-court identification would be tainted by the improperly held physical lineup. The issue once more is whether the lineup procedure was improper or impermissibly suggestive.
Reliance is principally placed upon the fact that the prisoners placed in the lineup with Graves were younger, had different features, were shorter, and did not wear glasses as Graves did. In short, he argues that they in no way resembled the description of the robber given to the police.
A review of the photograph of the lineup does not support the contention that it was impermissibly suggestive. A basic similarity between the participants is noticeable. Certainly they are not identical, and that standard is not required by the law. As already noted in connection with our discussion of Bills 2 and 3, Graves' then retained counsel was present at the lineup, helped to select the prisoners and made no objection.
This bill is without merit.

Bill 6
Craft was the manager of the finance company office where the robbery occurred. At the hearing on the motion to suppress evidence of identification, the prosecutor elicited testimony from him that on the day after the robbery the police asked him to look at a group of pictures *870 and from these he selected one of Graves. At this hearing the prosecutor introduced the photograph of Graves from which Craft identified him. No objection was made by defense counsel. At the conclusion of the hearing the motion to suppress was denied.
Later, during the trial, the prosecutor again interrogated Craft about the basis for his identification. In doing so he questioned Craft about the picture lineup and the physical lineup. He again showed the witness the photograph of Graves already introduced into evidence without objection on the motion to suppress and asked Craft if it was the same picture identified by him the day after the robbery. When Craft answered that it was, the photograph was again introduced in evidence without objection.
The interrogation of Craft by the prosecutor continued. Thereafter, referring to the photograph, he questioned Craft about the difference in the length of Graves' hair in that photo and its length on the day of the trial. Since Graves' hair was longer on the day of the trial, the witness was asked if he could nevertheless identify Graves, to which he answered, "Yes, I can." No objection was made by defense counsel to this question and answer.
Questioning then turned to the physical lineup attended by Craft. The prosecutor asked Craft if he could account for the fact that Graves' hair was shorter in the photograph used in the photographic lineup on July 21, 1972 than in the photograph of the physical lineup conducted on July 31, 1972. When the witness answered that he could, defense counsel objected and the objection was overruled.
Defense counsel argues that the photograph of Graves was a mug shot, an old picture, taken on the occasion of an arrest prior to the crime for which he was then being prosecuted. The only purpose the State could have, he argues, in emphasizing that defendant had short hair in the mug shot was to indirectly indicate that he had been arrested for some earlier offense since he was wearing his hair shorter than it was at the physical lineup shortly after the robbery.
Although at the time of this trial defense counsel was required to reserve a bill of exceptions to present an issue for review on appeal, none was reserved on this objection. A bill was perfected, however, and is filed in the record. The contention is therefore considered properly before us because the law was changed at the last session of the legislature dispensing with the requirement of the reservation of bills of exceptions and requiring instead an objection, and assignment of error filed within the time specified by the trial judge See Act 207 of 1974. Cf. La.Code Crim. Proc. arts. 841 and 844, effective Nov. 1973.
Our review of the transcript reveals that the photograph had been admitted in evidence twice and referred to many times during the trial before defense counsel made an objection.
Furthermore as the defendant had disguised himself with a long wig, identification was the crucial issue and evidence tending to support its validity or add weight to evidence already given was admissible. The photograph and that line of questioning were entirely relevant to the out-of-court identification upon which the State relied to make out its case.
The latest expression of this Court on the subject, borrowed from State v. Riley, 182 Neb. 300, 154 N.W.2d 741 (1967), appears in our decision in State v. Kinchen, 290 So.2d 860 (La.1974) to this effect:
"It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes."
*871 The relevance of the evidence, already introduced without objection far outweighed any prejudice to the defendant. Furthermore, the fact that defendant had been in trouble before was already before the jury, since defense counsel stipulated that the State had the right to introduce evidence of prior offenses. The defense contention is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents with reasons.
TATE, J., concurs but believes the better rule should be that trial counsel is entitled to view any memoranda used by the witness, whether for refreshing memory or as past recollection recorded whether in court or before court. See State v. Payton, 294 So.2d 211, 214 (La.1974).
DIXON and CALOGERO, JJ., concur.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 1 was reserved to the trial court's denial of defendant's motion for a mistrial made during the course of the State's opening statement. Those portions of the prosecutor's remarks upon which defendant's motion was based were allusions to defendant's flight from Louisiana to avoid prosecution and to defendant's efforts to obtain an alibi witness through intimidation. The majority fails to find reversible error in the trial court's denial of defendant's motion and affirms the conviction and sentence. It is my belief that defendant is entitled to a reversal of his conviction and sentence and a retrial wherein there will be no reference to such prejudicial matters.
The motion for mistrial was made after the jury was retired; after the motion the prosecutor admitted that he was in error in alluding to efforts of the defendant to secure alibi witnesses through intimidation. The prosecutor stated: "* * * I can perhaps qualify by any misleading impression I may have given to the jury by stating that I did not intend to convey to the jury that Mr. Graves had himself endeavored directly to obtain an alibi witness through intimidation or whatever. I can state to the jury that the alibi witness was obtained through the efforts of Mr. Graves' wife and I will in no way imply...." When the jury returned to the courtroom the trial court instructed the jury that opening statements are not evidence and the prosecutor, resuming his opening remarks, explained that the State would show that Mrs. Graves, not the defendant, attempted to procure an alibi witness.
Accepting for the sake of argument the majority's conclusion that evidence of a defendant's attempt to intimidate a witness is admissible "since it leads to an inference that, if admitted, it would operate unfavorably to the accused" this does not render harmless the error committed when the prosecutor commented that the defendant's wife had attempted to procure an alibi witness. According to the authority cited by the majority, attempts to influence a witness' testimony made by a party other than the defendant are admissible only if there is some evidence to connect the accused with the attempts made by the third party or to show the authorization of the accused. No such evidence exists in the present case; indeed, after the damaging mention of this conduct on the part of defendant's wife during opening statement, no evidence tending to show such conduct, or to connect it with the defendant, was introduced during the course of the trial. Nor was there any evidence introduced during the course of trial which substantiated the State's damaging remark that defendant had fled Louisiana to avoid prosecution.
It is my opinion that these damaging remarks which injected irrelevant and inflammatory issues into the trial of this defendant were grounds for mistrial and constituted reversible error. This is most certainly the case when, as here, no evidence is introduced at trial to support these portions *872 of the opening statement. Cf. State v. Bell, 279 So.2d 164 (La.1973).
I respectfully dissent from the affirmance of the defendant's conviction and sentence.