MITCHELL RENOZ SAUNDERS *v.* STATE OF
MARYLAND

[No. 6, September Term, 1975.]

*Decided November 3, 1975.*

456

The cause was argued before ORTH, C. J., and MELVIN, J., and EDWARD F. BORGERDING, Administrative Judge of the District Court of Maryland for District 1, specially assigned.

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Arnold M. Zerwitz, Assistant Public Defender,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Samuel Brave, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

BORGERDING, J., delivered the opinion of the Court.

On May 21, 1974, a criminal information was filed against appellant, Mitchell Renoz Saunders, charging him with rape, assault with intent to rape, and assault. After a four-day jury trial in the Criminal Court of Baltimore he was convicted of rape, and subsequently sentenced by Judge Meyer M. Cardin to 10 years imprisonment. On appeal, he assigns three alleged errors to the trial court: admission of testimony that a third party attempted to induce prosecution witnesses to alter their statements; admission of improper rebuttal testimony; and impeachment of appellant with his assertion of Fifth Amendment rights.

In order to put the case in proper perspective, a brief recital of the pertinent facts is necessary. On Easter Sunday afternoon, April 14, 1974, Narvis Bruce, an eighteen year old girl, met appellant's cousin, Vincent Reynolds, and the cousin's girlfriend, Corinne Lemon, on Park Heights Avenue in Baltimore City. After visits to various places in the neighborhood, during some of which marijuana was smoked,

Reynolds, according to Lemon and Miss Bruce, introduced appellant to her. Late in the evening, the foursome eventually went to a party in a house on Reisterstown Road. After midnight, Reynolds and Lemon left the party. Shortly thereafter, Miss Bruce left. She testified that as she walked, looking for Lemon, a man grabbed her, pulled her into a park, tore her clothes, raped her and hit her in the eye and lip. She described her assailant as wearing a white wool knitted hat with a blue dungaree jacket, a flowered shirt, and dark pants. She did not identify the appellant as her assailant in her initial complaint to the police; however, she did identify him in court. Lemon testified that the following morning after spending the night at Reynolds' house, she awoke to find appellant there wearing the same flowered shirt as the night before. At his trial, Saunders' defense was twofold; 1) that he had an alibi and 2) that the rape may have been committed by his twin brother, Michael, who had died of a narcotic overdose two months prior to trial. He contended that he had never met Miss Bruce and was at home at the time of the crime. Six witnesses were produced in his behalf who corroborated his testimony in varying degrees that he was home the evening of April 14th and 15th. Jerome Shaw, a witness for the defense, testified that he saw appellant's twin brother, Michael, but not the appellant at the party preceding the alleged rape. Glena Coleman, Saunders' aunt, testified that a white knitted hat, dungaree jacket and dark pants had been purchased for appellant's twin brother and that the twin brother was wearing these clothes on April 14.

In the State's case in chief, Ernest Womble, who attended the party on Reisterstown Road, testified over Saunders' objection that Reynolds endeavored to induce him to change his testimony to the effect that the party that evening was a "planned gathering" as opposed to an "unplanned gathering". Cross-examination by defense counsel elicited same from Womble. Next, the State called Corinne Lemon, who testified over objection that Reynolds talked to her about altering her testimony relating to the shirt Saunders was wearing the day of the rape. In the presentation of the

defense, no testimony was either solicited or produced by the defendant or his witnesses on direct examination or cross-examination as to Reynolds' endeavors to have the prosecution witnesses, Womble and Lemon, alter their testimony. Over defense counsel's objection, the State was allowed in "rebuttal" to call Reynolds as a "hostile" witness. Reynolds stated that the appellant was not present at the party prior to the rape and denied attempting to influence the testimony of any witness. The State was then allowed to call Detective Carl Reichelt, Baltimore City Police Department, to rebut the testimony of Reynolds to the extent that in a telephone conversation, Reynolds had indicated that the appellant was present at the party. Lemon was then recalled by the State in "rebuttal". She was shown a note she said had been given her by Reynolds' brother and she identified it as having been written by Reynolds. The note, introduced into evidence and exhibited to the jury without objection, said:

> "Hello baby—inside—Corinne I will see you in court and please change your statement. I will talk to you in court. Love, Vincent, smile."

On cross-examination, the following exchange took place between appellant's counsel and Lemon:

> "Q. Did you testify at your last appearance that Vincent had talked to you and all he asked you to do was to say there was no shirt that color? Did you use those words?
>
> A. I don't remember.
>
> Q. Now tell me what Vincent did ask you to say?
>
> A. He asked me to say it was Michael who was with us that night and not Mitchell, and he asked me to say that there was no shirt and that we didn't see Mitchell the next morning."

In closing argument the prosecutor argued to the jury the alleged attempts by Reynolds to get the State's witnesses to change their statements. Appellant challenges as error the

admission of the remarks of Womble and Lemon that Reynolds sought to influence their testimony.

While the precise question raised by the appellant is one of first impression in Maryland, the authorities and the jurisdictions which have considered the point are in agreement with the general principle that an attempt by an accused to suborn a witness is relevant and may be introduced as an admission by conduct, tending to show his guilt. *State v. Graves,* 301 So. 2d 864, 866 (La. 1974); *People v. Hooper,* 50 Mich. App. 186, 212 N.W.2d 786 (1973); *People v. Perez,* 169 Cal.App.2d 473, 337 P. 2d 539 (1959); *Staggs v. State,* 51 Ala. App. 203, 283 So. 2d 652 (Ala. Cr. App. 1973); *Davis v. Commonwealth,* 204 Ky. 601, 265 S. W. 10 (1924); *State v. Reuschel,* 312 A. 2d 739 (Vt. 1973); *People v. Moore,* 70 Cal.App.2d 158, 160 P. 2d 857 (1945); C. Torcia, 1 *Wharton's Criminal Evidence,* 462 (13th Ed. 1972), 29 Am.Jur.2d *Evidence,* Secs. 292 & 293 (1967). Evidence of such attempts by another is not admissible, however, where there is no evidence to connect the accused therewith. In order to make admissible evidence of attempts by a third person to influence a witness not to testify or to testify falsely, it must be established that such attempts were done by the authorization of the accused. *State v. Graves, supra;* *People v. Terry,* 21 Cal. Rptr. 185, 370 P. 2d 985 (1962); *cert. denied,* 375 U. S. 960 (1963); *People v. Moore, supra;* 29 Am.Jur.2d, *Evidence,* Sec. 293 (1967).

Neither the State nor the defendant challenges the validity of this principle. However, the State argues that "the closeness of the relationship between the appellant and Reynolds was sufficient to allow the prosecutor to make inquiry into the attempts by Reynolds to have Womble and Lemon change their testimony." In effect, the State contends that the close relationship between Saunders and his cousin under the facts of this case indicates that appellant authorized attempts to induce witnesses to testify falsely. We disagree. A thorough review of the record indicates that other than the fact that Reynolds was a cousin of the appellant, there is no evidence to link the appellant to the alleged abortive attempts of Reynolds.

Although the authorization by the accused may be proved by direct or circumstantial evidence, *People v. Caruso*, 174 Cal.App.2d 624, 345 P. 2d 282, 292 (1959) (cases cited therein), and an inference may be sufficient to connect the accused, *State v. Esposito*, 73 R. I. 94, 54 A. 2d 1 (1947), the fact that the third party and the accused are related has not been held to be adequate proof, by itself, of the necessary authorization. *People v. Terry, supra.* In *Tyler v. State*, 145 Tex. Cr. R. 315, 167 S.W.2d 755 (1942), the Court found that an accused is not bound by the efforts of relatives or friends to suppress evidence unless his connection with the third party is clearly shown. *People v. Perez, supra*, citing *People v. Moore, supra,* held that "[i]n the instant case it is not denied that the person identified by complaining witness as the person making the offer was defendant's brother. But mere relationship, of itself, has never been held sufficient, respondent's contention to the contrary notwithstanding."

In this regard, the State relies on *State v. Graves, supra*, which held that "[t]he close relation demonstrated between this accused and his wife convinces us that though the evidence of her attempt to induce an alibi witness to lie is prejudicial, it is admissible as revealing consciousness of guilt on the part of the accused." In *Graves*, the Supreme Court of Louisiana, citing *People v. Terry, supra*, as authority, accepted the general principle that before such attempt (to induce a witness to testify falsely) is admissible, there must be some evidence to connect the accused therewith or show that the attempt by a third person was made with the authorization of the accused. The Court went on to hold that the prosecutor's erroneous argument to the jury that the defendant attempted to induce an alibi witness to lie when in fact, defendant's wife had allegedly made such attempt, was made harmless by trial court's admonition to the jury and by the prosecutor's correction soon after. Furthermore, the majority of the Court predicated their ruling on "the close relation *demonstrated* (emphasis added) between the accused and his wife" although it is not clear from reading the opinion as to what evidence besides the marital relationship demonstrated that the accused

authorized her act. See dissent on this point, 301 So. 2d at 871. We do not accept the State's interpretation of the results reached in *Graves.*

Here the State offers nothing more than the fact appellant and Reynolds were cousins; that they were together the day of the crime and the morning after (testimony which was challenged by the defense); and a hefty dose of conjecture, surmise or suspicion to prove authorization. We hold that mere relationship, of itself, is not sufficient. There must be additional evidence tending to connect the defendant with efforts to tamper with the witness. Therefore, it was error to admit the testimony of Womble and Lemon on Reynolds' alleged attempt to alter their testimony.

The erroneously admitted evidence is intertwined with the second contention of the appellant, to wit: admission of improper rebuttal testimony. Therefore, we shall, next, consider how that testimony came before the jury.

Over the objection of the appellant, Womble and Lemon testified for the State that Reynolds endeavored to have them alter their testimony. Even though the defense did not produce any evidence on this point, the State over the objection of defense counsel was permitted to call Reynolds in "rebuttal". When Reynolds denied attempting to influence the testimony of any witness, the State was allowed to recall Lemon in "rebuttal" to contradict him and offer additional evidence.

Recently, we have reiterated that:

> "Any competent evidence which explains, or is a direct reply to, or a contradiction of, material evidence introduced by the accused may be produced by the prosecution in rebuttal. *Shanks v. State,* 185 Md. 437, 45 A. 2d 85 (1945). And what constitutes rebuttal testimony in a criminal prosecution is a matter resting in the sound discretion of the trial court." *Dobson v. State,* 24 Md. App. 644, 659 (1975), *cert. denied,* 275 Md. 747, Misc. No. 78, September Term, 1975, filed June 2, 1975. See also *Lane v. State,* 226 Md. 81, 90 (1961).

Since no testimony was either solicited or produced by the appellant or his witnesses on direct examination or cross-examination as to Reynolds' endeavors to have the prosecution witnesses, Womble and Lemon, alter their testimony, the trial court by allowing the State to question Reynolds in rebuttal in effect placed the State in the position, not of rebutting evidence produced by the accused but of supporting or contradicting the testimony of its own witnesses. When to the surprise of no one, Reynolds denied the allegations of suborning the witnesses, the error was compounded when the State was allowed to recall Lemon in "rebuttal". Lemon then proceeded to contradict and impeach the testimony of Reynolds, and in addition, produced a note to support her contention, and then expanded her initial testimony as to what Reynolds had requested. Neither the testimony of Reynolds nor Lemon, on this point, serve to rebut anything the defense had demonstrated or implied. Therefore, it was admitted in violation of our holding in *Dobson, supra,* and was error.

The State argues that the testimony of Reynolds' attempts to suborn the prosecution witnesses and the admission of it as rebuttal evidence, even if error, was harmless beyond a reasonable doubt because there was no resulting prejudice to Saunders. The State reaches this conclusion primarily on the basis that in its opinion the evidence of appellant's guilt is overwhelming. However, a review of the record does not support this contention. The nature of the prosecution's case, to wit: the mental condition of the victim prior to the rape; [1] her testimony at trial; [2] the conflict between

---

1. Miss Bruce's mental condition, prior to the crime, was described by both prosecution and defense witnesses as "acting strange"; "was tripping"; "out of it"; "very high"; and "walking around paranoid".

2. The prosecutor in his argument to the jury candidly characterized the testimony of the victim:

"Now whether Narvis Bruce was merely high on marijuana on Sunday, April 14th or whether she was tripping on acid, you will recall that she said she had not used LSD for a long period of time before that, and to be fair, as it might be, the State is not disillusioned, she was quite high, she was disorientated, there is no question. If the State's case rested on the testimony of Narvis Bruce, believe me this case would have not been before you. I am

statements to police and testimony at trial by both Lemon and Reynolds; considered in the light of the defendant's defense and the witnesses produced in support thereof, confronted the jury with a classic question of credibility of witnesses.

While we are unable to state to what extent, if any, the testimony that Reynolds allegedly attempted to suborn prosecution witnesses and the manner in which that evidence was admitted influenced the jury's decision, there is present the very real possibility, based on a thorough reading of the record, that this improperly admitted evidence obfuscated the issue and contributed to Saunders' conviction. *Fahy v. Connecticut*, 375 U. S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963). Where trial is by a jury, all reasonable doubts as to the effect of erroneously admitted evidence upon the jury's determination of guilt must be resolved in favor of the objecting party. *Johnson v. State*, 23 Md. App. 131, 138 (1974); *Gilchrist v. State*, 2 Md. App. 635, 638 (1967); see also *Younie v. State*, 272 Md. 233 (1974). Hence this is not a case of harmless error. As Judge Richard P. Gilbert of this Court stated in *Dobson, supra*, at page 662:

> "The State's introduction of uncharged misconduct evidence denied appellant the protection which the rules of evidence are designed to afford.
>
> > 'Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard [citizens from unlawful] convictions, with resulting forfeitures of life, liberty and

under no delusion that Narvis Bruce makes this case. It wouldn't convict Adolph Hitler for spitting on the sidewalk based on Narvis Bruce's testimony standing alone."

property.' *Brinegar v. United States,* 338 U. S. 160, 174, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)."

Therefore, we hold that the trial court committed prejudicial error in admitting the testimony, and accordingly we reverse and remand the case for a new trial.

In view of our holding, it is unnecessary for us to discuss the other contentions raised by appellant.

> *Judgment reversed.*
> *Case remanded for new trial.*
> *Costs to be paid by Mayor and*
> *City Council of Baltimore.*