ROBERTSON, Presiding Justice,
for the Court:
On February 13, 1976, a joint indictment against Rezette Terry and James Coleman was returned by the grand jury in the Circuit Court of the Second Judicial District of Harrison County, charging them with the murder of Ellis Hertfield on July 5, 1975. After a joint trial, the jury returned this verdict: “WE, THE JURY, FIND THE DEFENDANTS GUILTY OF MURDER.” The court sentenced both defendants to life imprisonment in the state penitentiary.
*78 The assignments of error are:
I.The court erred in not terminating the trial because of a hearing impairment suffered by Terry’s counsel.
II.The court erred in not ordering the trials to be severed.
III. The court erred in permitting cross-examination and impeachment of appellant Coleman by using his wife’s statements at an extradition hearing.
IV. The court erred in permitting cross-examination of appellant Terry about statements made to his attorney during a recess.
V.The court erred in refusing a directed verdict.
Terry and Coleman, residents of Chicago, Illinois, on July 2, 1975, drove to Biloxi, Mississippi, in Terry’s 1974 Cadillac to visit L. C. Archie, a mutual friend who had formerly lived in Chicago but was now living in Biloxi. They met Ellis Hertfield their first night in Biloxi, and talked with him on July 3rd and 4th. Hertfield was a known heroin and drug dealer.
On Saturday morning, July 5,1975, Terry and Coleman left L. C. Archie’s house in Terry’s 1974 Cadillac. According to Coleman, he was driving and Terry was sitting on the passenger side of the front seat. They picked up Benjamin Reddix and Joe Louis Archie, a brother of L. C. Archie, and proceeded to Hertfield’s house.
At the trial, Reddix testified that Terry said he wanted to get his money from Hert-field. Reddix further testified that at Hertfield’s house Terry got out and talked with a woman in the yard, then came back to the car, and they drove around the corner, where Reddix and Joe Louis Archie got out. According to Reddix, the defendants picked them up again, drove to an adjacent street, they all went through Hertfield’s neighbor’s yard, and jumped the fence behind Hertfield’s house. The defendants tried the front, side and back doors to Hert-field’s house, while Reddix and Archie waited at the back corner of the house. Defendants told Reddix and Archie to go ahead, so they climbed back over the fence and were walking down a nearby street when they heard a shot from the direction of Hertfield’s house. A few minutes later, the defendants drove up in Terry’s Cadillac, Terry handed Archie a .22 caliber pistol, “and told us to go on about our business.”
Reddix and Archie examined the pistol, found that it was loaded and had one spent shell. Reddix threw the pistol in a drainage ditch and later told police where to find it.
Irma Williams Ricks, who lived with Hertfield for four years, testified that Terry and a man who looked like Coleman had gone by Hertfield’s house on July 4th and talked with Hertfield. On Saturday, July 5th, she was in the front yard when they came up, put a gun to her head, forced her to go into Hertfield’s home and demanded of her where Hertfield kept his money. At that time Hertfield came in and Terry demanded his money. They argued, Terry hit Hertfield several times, then shot him one time and fled the scene.
It was stipulated that Dr. Irwin Joffe, a pathologist, performed a post-mortem examination on Hertfield and that he died as a result of a single small caliber gunshot wound in the upper left shoulder area.
Marzine Sims, who lived in the neighborhood, testified that he was driving down a street beside Hertfield’s house on July 5th when he saw Terry and Coleman hastily go to their car, get in, and take off at a rapid rate of speed. His identification of Terry and Coleman was positive and unequivocal.
Both defendants, Terry and Coleman, testified and each corroborated the other’s testimony. They both admitted seeing Hert-field several times during their stay in Biloxi. Both claimed that Reddix and Joe Louis Archie were at L. C. Archie’s house on July 5th when they woke up. Both testified that L. C. Archie suggested that they go by Hertfield’s house to tell him goodbye before they returned to Chicago. Coleman testified that he was driving Terry’s car when they dropped off Reddix and Joe Louis Archie on the way to Hertfield’s house. Both Terry and Coleman then testified that they drove on to Hertfield’s house *79 and that Terry got out and knocked on the door. Terry testified on direct examination by his retained counsel that no one answered the door but that he heard people talking in the house and heard noises like they were cursing or fighting, so he came back to his car and told Coleman and they then drove away. Both testified that after getting some food they left Biloxi, with Coleman driving, and returned directly to Chicago.
Coleman testified that, although he had planned to visit his father in Louisiana, he and Terry drove from Biloxi directly to Chicago.
Terry’s appellate counsel, appointed by the court, assigned as his first error that the trial court erred in not terminating the trial because of a hearing impairment suffered by Terry’s trial counsel. Terry and Coleman both retained Honorable Howard McDonnell, a thoroughly capable and experienced criminal defense lawyer. McDonnell suggested that Honorable Peter Halat be employed to represent Coleman, and Ha-lat was retained as additional defense counsel. McDonnell did have a known hearing problem, but remedied his condition by using hearing aids. A careful examination of the record reveals that McDonnell was vigorous and resourceful in his defense of Terry; that McDonnell and Halat made common battle for their clients; and that both Halat and the trial judge were diligent in their efforts to assure that McDonnell heard the testimony and all of the other proceedings. There is no merit in this assignment of error.
The next assignment of error is that the trial court erred in not ordering a severance. No motion for a severance was made by either defendant, and this alleged error was not preserved for appeal. Even if a severance had been requested, the trial court would not have been in error in overruling such a motion. The state’s evidence against both defendants was identical; their defenses were identical. Under these circumstances, the trial judge was not in error in failing to grant a severance on his own motion.
The third assignment of error is that the court erred in permitting cross-examination for impeachment purposes of Appellant Coleman about his wife’s sworn statements at Coleman’s extradition hearing in Chicago. At his trial in Biloxi, Coleman testified that he travelled from Chicago to Biloxi with Rezette Terry, was with Terry the whole time they were in Biloxi from July 2nd through July 5th, 1975, that he was with Terry and in fact drove his car to Hertfield’s house on the morning of July 5, 1975, and then returned with Terry to Chicago on July 5th. At his extradition hearing in Chicago, Coleman and his attorney were present when Coleman’s wife testified that he was in Chicago on July 5, 1975, and not in Biloxi. It should be here noted that the principal inquiry at an extradition hearing is whether the person sought to be extradited was in the state where the crime was committed on the date that it was committed. In Sartain v. State, 311 So.2d 343 (Miss. 1975), this Court said:
“However, what appellant overlooks in this case is that the three inconsistent oral statements were admissible for a purpose other than impeachment. They had substantive effect as tending to show a consciousness of guilt on the part of appellant. The rule is stated in 22A C.J.S. Criminal Law § 738 at 1094-1095 (1961), where it is said:
Self-serving statements made by or for accused out of court, explaining suspicious circumstances, may be proved against him, and their falsity may then be shown. The fact of their falsity admits them as indicating an attempt to explain away incriminating circumstances by falsehoods. Where accused testifies, his self-serving statements contradicting his testimony, may be shown. It may be shown also that accused made two or more conflicting statements out of court in reference to an incriminating fact; and this right is not affected by the fact that accused does not become a witness. Inconsistent statements relevant to the crime charged are not limited to use for impeachment purposes; they have sub *80 stantive effect as tending to show a consciousness of guilt.” 311 So.2d at 345. (Emphasis added).
Coleman and his attorney were present at the extradition hearing, and remained silent while Mrs. Coleman testified that he was in Chicago on July 5th in an obvious attempt to defeat extradition.
In dealing with a similar situation, the Supreme Court of Louisiana, in State v. Graves, 301 So.2d 864 (La. 1974), said:
“The close relation demonstrated between this accused and his wife convinces us that, though the evidence of her attempt to induce an alibi witness to lie is prejudicial, it is admissible as revealing consciousness of guilt on the part of the accused.” 301 So.2d at 866.
There is no merit in this assignment of error.
The fourth assignment of error was that the court erred in permitting cross-examination of Appellant Terry about a conversation in the courtroom with his attorney during a recess. The assistant district attorney questioned Terry about whether his lawyer instructed him to say that he had only been convicted of a traffic violation and not another felony. Terry denied any such instruction from his attorney and the prosecution did not pursue this matter any further. If there were error in admitting this brief colloquy, such an error would be harmless.
The last assignment of error is that the court erred in not directing a verdict for each defendant. There is no merit in this assignment of error. The testimony of the state’s witnesses and that of the defendants was in hopeless conflict. It was up to the jury to weigh the conflicting testimony and to decide what weight would be given to each witness’ testimony. As this Court held in Nicholson v. State, 254 So.2d 881 (Miss. 1971):
“In the face of conflicting testimony, the jurors may accept the testimony of some witnesses and refuse that of others, and may accept in part and reject in part the evidence on behalf of the state and on behalf of the accused. Cobb v. State, 235 Miss. 57, 108 So.2d 719 (1959). The jury accepted the testimony on behalf of the state and it was ample to support their verdict of guilty.” 254 So.2d at 883.
The conviction and sentence of each defendant are affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.