**Floyd WORTHAM, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4741.**

Supreme Court of Alaska.

Oct. 3, 1980.

Mark Weaver, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

W. H. Hawley, Jr., Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

OPINION

BOOCHEVER, Justice.

Floyd Wortham was tried on counts charging him with blackmail of Katherine Owings and unlawful sale of a narcotic drug, cocaine. When the jury indicated that it had reached agreement on the drug count but could not agree on the blackmail count, the state agreed to dismissal of the latter charge. Wortham appeals his conviction for unlawful sale of cocaine. His principal arguments on appeal are that the trial court erred in receiving evidence that the residence of Katherine Owings, who was a witness for the prosecution, was ransacked before Wortham's trial, and erred in admitting as evidence certain weapons found in Wortham's car and home. We reject the arguments and affirm the conviction.

Owings testified that in September, 1978, while on a visit to Anchorage, she met Wortham at a party. According to her testimony, he asked her to work for him as a prostitute. She refused, but because she was unable to obtain a ride back to Fairbanks, she consented to stay briefly with him because he promised to arrange transportation later. She maintained that Wortham thereafter imprisoned her in his house for approximately five days. During that period, she gave him her personal jewelry because he threatened to break her arms or shoot her. She had seen guns in the house.

Eventually Owings returned to Fairbanks where she was contacted by the police. She agreed to assist the police in negotiating a drug purchase from Wortham in the hope of recovering her jewelry. She arranged a meeting between Wortham and Gail Reas, an undercover trooper. At the meeting, Owings and Reas requested Wortham's as-

sistance in procuring cocaine. According to Owings and Reas, Wortham told them to drive him to a designated location. He left the car and returned shortly with a sample of white powder. Reas then gave him $700 in marked currency. He again departed and returned with a baggie containing 6.8 grams of cocaine.[1]

The following evening, Owings arranged another meeting to buy more cocaine from Wortham. No sale was consummated, however, and Reas decided to arrest Wortham. The police found two bills identified as part of the marked money given to him by Reas the previous day.[2] A gun registered to Robert Scott, a passenger in Wortham's car, was discovered in the car at the time of Wortham's arrest. Subsequently, a search warrant was issued and executed at Wortham's residence. A number of guns, ammunition and a bayonet were seized.

Wortham appeals his conviction, contending that the trial court abused its discretion in admitting: (1) the guns and ammunition seized from Wortham's residence; (2) the gun seized from the car at the time of his arrest; and (3) the testimony by Owings that her residence in Fairbanks had been ransacked.

Wortham contends that guns and ammunition seized from his residence should not have been admitted as evidence because they were not relevant. We believe that the guns were admissible because they were clearly relevant to the blackmail charge, even though that charge was later dismissed. Owings testified that she stayed at his residence because he threatened to shoot her, and that she had seen guns in the house. Further, she gave her jewelry to him because he threatened her with physical harm. Moreover, Owings' testimony describing the types of weapons she had seen was sufficient to allow a jury to infer with reasonable certainty that the weapons

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. Wortham testified that he met Owings at a Kentucky Fried Chicken restaurant because he was hungry. He further stated that he suspect-

ed Reas was a Metro agent and refused to become involved in any cocaine transactions.

2. Wortham maintained that the bills were planted on him.

seized from the residence were the weapons Owings had seen.[3] It was for the jury to determine what weight, if any, to give the evidence.[4] We hold that the trial court did not abuse its discretion in admitting this evidence. *Newsom v. State,* 533 P.2d 904, 908 (Alaska 1975).

█ Next, Wortham argues that the trial court erred in admitting into evidence the gun seized from his car. We believe that, even assuming error, the error was harmless. The presence of firearms was probative on the question of blackmail and this charge was dismissed, so the evidence of the gun certainly did not contribute to a conviction on this count. As to the other charge, the evidence demonstrating that Wortham was guilty of the sale of cocaine was overwhelming. Whatever effect the disputed evidence might have had, we conclude that the error, if any, could not "appreciably affect the jury's verdict." *Love v. State,* 457 P.2d 622, 632 (Alaska 1969).

Finally, Wortham contends that the trial court erred in admitting Owings' testimony that her residence had been ransacked. At a mid–trial bail hearing which resulted in remanding Wortham to custody, Owings testified that the back door to her residence was broken in and her apartment ransacked. Later that day the trial court heard arguments regarding the admissibility of this testimony at trial. The trial court ruled that there was a sufficient nexus between Wortham and the break–in to warrant admission of the evidence.

█ It is clear that evidence of intimidation of a witness by a party is admissible in a criminal trial. *State v. Adair,* 106 Ariz. 4, 469 P.2d 823 (1970); *People v. Perez,* 169 Cal.App.2d 473, 337 P.2d 539 (1959); *Saun-*ders *v. State,* 28 Md.App. 455, 346 A.2d 448, 450 (1975); *State v. Gonzales,* 93 N.M. 445, 601 P.2d 78 (App.1979); *see generally* C. McCormick, Law of Evidence § 273, at 660–62 (2d ed. 1972); 2 J. Wigmore, Evidence §§ 277–78 (3d ed. 1940). The rationale for admissibility is that "[b]y resorting to wrongful devices [a defendant] is said to give ground for believing that he thinks his case is weak and not to be won by fair means." C. McCormick, Law of Evidence § 273, at 660 (2d ed. 1972). Where the act of intimidation is not actually committed by the defendant, there must be a connection between the defendant and the tampering.

> Evidence of such attempts by another is not admissible, however, where there is no evidence to connect the accused therewith. In order to make admissible evidence of attempts by a third person to influence a witness not to testify or to testify falsely, it must be established that such attempts were done by authorization of the accused . . . . [T]he authorization by the accused may be proved by direct or circumstantial evidence and an inference may be sufficient to connect the accused.

*Saunders v. State,* 28 Md.App. 455, 346 A.2d 448, 450–51 (1975) (citations omitted). *Accord, State v. Gonzales,* 93 N.M. 445, 601 P.2d 78 (App.1979).

█ At the bail hearing, Darrell Frazier testified that during a conversation with Wortham after the break–in Wortham said that some of his out–of–state friends went to Fairbanks and "tore up her place, and stuff like that." He also said that Owings "wouldn't make it to court" and she was "not going to come out of the court room."[5]

---

**3.** *See Eben v. State,* 599 P.2d 700, 711 (Alaska 1979) ("The state need only have shown as a matter of reasonable certainty that the four knives were kitchen knives removed from the Eben apartment"). *See also United States v. Johnson,* No. CA 78-2736 (9th Cir. 1980).

**4.** *Id.* at 711 n.31.

**5.** Frazier testified as follows:

> There was some people that went to Fairbanks and tore up her place, and stuff like that. He was telling me about.
>
> . . . . .
>
> . . . [S]ome people went up there and they went through her house and stuff like this. And that–that she wouldn't make it to court someways.
>
> . . . . .
>
> . . . [H]e told me that somebody went -some people went up to Fairbanks. . . . And that they was going to do this and that, you know,

On the basis of this testimony, the court ruled that there was a nexus between the break–in and Wortham. Although in his testimony before the jury Frazier gave less evidence connecting Wortham to the break–in, Wortham's counsel failed to renew his motion to preclude testimony concerning the break–in. Had Wortham's counsel objected, the prosecution could have elicited more evidence from Frazier to effectively connect the break–in with Wortham, as was done at the earlier hearing. The earlier unsuccessful effort to preclude admission of the testimony might reasonably have been considered by the prosecutor as having been abandoned when no foundational objections were raised at trial. We do not believe that the trial court abused its discretion in admitting Owings' testimony. The testimony by Frazier established a sufficient inference that Wortham was connected with the break–in of Owings' residence.

We also reject Wortham's argument that, even assuming the testimony was probative, the trial court abused its discretion in admitting the testimony because its presentation was so prejudicial, especially since Owings was recalled to present this testimony. Wortham has failed to establish an abuse of discretion. *Frink v. State*, 597 P.2d 154, 170 (Alaska 1979); *Ladd v. State*, 568 P.2d 960, 968 (Alaska 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); *Poulin v. Zartman*, 542 P.2d 251, 260 (Alaska 1975).

The conviction is AFFIRMED.

and Cathy (Owings) was not going to come out of the courtroom.

· · · · ·

Q. these people were–were they friends of Floyd's or what?
A. Supposedly they were.
Q. Did Floyd tell you this, or are you just thinking this?
A. He said that he has some friends out of state.

· · · · ·

Q. That he had some friends out of state?
A. Up here. Yeah.
Q. . . . [T]hey were going up to Fairbanks?
A. . . . he didn't say they were going up to Fair–. . . he said he had some friends–*some people of his went up to Fairbanks, you know.*

· · · · ·

A. And I guess that's when Cathy Owings' house was supposed to have been terrorized and stuff. [Emphasis added.]