GAUDIN, Judge.
Appellant is Antoinne Williams, who was convicted of three counts of armed robbery by a jury on March 7, 1985. A week later, the State filed a bill of information charging Williams with being a multiple offender; and on May 3, 1985, following a hearing on the applicability of the habitual offender statute, Williams was sentenced to 198 years at hard labor on each count, the sentences to run concurrently but without benefit of parole, probation or suspension of sentence.
Williams was convicted of putting a pistol to the head of John E. Ware, Jr. and robbing him and two companions of money, jewelry and other objects.
This appeal is based on these assignments of error:
(1) The trial judge erred in denying a defense motion for a mistrial following testimony about a photographic lineup not disclosed to Williams during discovery;
(2) The trial judge erred in allowing Ware’s mother to testify with regard to statements made to her by appellant’s brother, Kevin Williams;
(3) The trial judge erred in not reading a jury charge submitted by the defendant regarding the presumption that an available but not called witness’ testimony would be unfavorable; and
*628 (4) The trial judge was wrong in adjudging Williams to be a multiple offender.
We have given careful consideration to these assignments of error and find none of sufficient merit; and we have, in addition, searched without success for errors patent. We therefore affirm Williams’ convictions and sentences.
ASSIGNMENT NO. 1
During the cross-examination of Michael Digiacomo, one of the victims, it was brought out that he had been shown various photographs on the night the crime was committed but he was not able to identify the gunman. Instead, he picked out two photographs as possibly being the man who had robbed him and the others.
When David Blache, another victim, was cross-examined, he said that he, too, had been shown photographs but he was unable to make a positive identification. He selected three photographs as being possibly the man with the pistol.
These disclosures by Digiacomo and Blache came as a surprise to the prosecutor as well as to defense counsel. With the jury excused, Williams’ attorney said:
“... Your Honor, I’d like to state that prior to this trial the District Attorney in lieu of filing a discovery motion had allowed me to review his file which I did and there was nothing in Mr. deLaup’s file. I’m sure he was unaware that photo identification lineup was held. I did not see anything in there and my conversations with Mr. deLaup I don’t believe he saw anything in there either.”
Williams now argues that he relied on the prosecutor’s file containing all relevant information. Appellant does not allege any deceit on the State’s part, but he does believe that the Assistant District Attorney whose file was examined had an obligation to the defendant to in fact have a complete file, including so called Brady[1] material favorable to the defense. The State, once a request is made, has a duty to disclose such evidence and the duty is a continuing one. See State v. Ates, 418 So.2d 1326 (La.1982).
Assuming that the “open file” procedure constituted a sufficient discovery request (although we are unaware of any decision so stating), the prosecutor was then bound to reveal any and all evidence within his possession, control, custody or knowledge. Everything the State had or knew at that time was made available to the defense. The prosecution, however, is under no duty to know everything about each case; specifically, in this case, it did not breach any duty to Williams by not having learned, either by personal or investigative effort, about the photographic lineups.
In State v. Myers, 438 So.2d 1332 (La.App. 3rd Cir.1983), writs denied at 443 So.2d 594, the court held that the district judge did not err in denying defendant’s motion for discovery of newspaper articles and television news coverage of a bank robbery when the State did not have possession, custody or control of the things requested.
Further, a discovery failure does not automatically require a reversal. In State v. Ray, 423 So.2d 1116 (La.1982), the Supreme Court of Louisiana stated:
“We must review the record for a determination of whether any prejudice which may have resulted from the noncompliance caused the trier of fact to reach the wrong conclusion.”
Here, the jury heard the testimony about the photographic lineups and was thus aware that Digiacomo and Blache had not made precise identifications from the pictures. Both witnesses did identify appellant at trial, and apparently these identifications, along with other testimony and evidence, helped convict Williams.
The prosecution did not advise the defense of a “working” lineup in State v. Dixon, 457 So.2d 854 (La.App. 1st Cir. *629 1984). In affirming the defendant’s conviction, the court said:
“We cannot say that the district court judge abused the much discretion accorded him by law in failing to grant a mistrial under the particular facts and circumstances of the instant case. The defendant was given an opportunity to discover the undisclosed evidence at the trial and was permitted to cross-examine concerning same. No recess was requested to prepare the cross-examination. The defendant presented to the jury by way of his cross-examination all of the available facts concerning the ‘working’ lineup identification. The jury, after considering this evidence, apparently reached the conclusion that the victim’s identification of the defendant was accurate and valid. The failure of the State to disclose the fact of the ‘working’ lineup, although possibly improper, constituted harmless error.”
From State v. Roussel, 381 So.2d 796 (La.1980):
“We agree with the trial judge that it would have been preferable if the prosecution had disclosed the information at issue here prior to trial. Nondisclosure and tardy disclosure of information which may constitute Brady material invite delay, protracted litigation, and involve the risk that an otherwise valid conviction must be reversed and a new trial ordered. Nonetheless, in the case at bar defendant’s late discovery of the alleged exculpatory information did not deprive defendant of an opportunity to effectively present the alleged Brady material to the trier of fact. Therefore we cannot say that defendant was denied his constitutional right to a fair trial.”
Williams, in his argument to this Court, suggests that he was prejudiced by not having prior (to trial) knowledge of the photographic lineups, but he doesn’t say how or why he was prejudiced in presenting his defense. As in State v. Dixon, supra, and State v. Roussel, supra, the Williams jury had before it all of the evidence and testimony and chose to convict.
The record does not indicate that Williams was denied a fair trial by not having prior knowledge of the photographic lineups.
ASSIGNMENT NO. 2
Mrs. Cheryl Ware, the mother of victim John E. Ware, Jr., was called as a witness by the State. Over defense objection, Mrs. Ware was permitted to say that she had been contacted by Kevin Williams, Antoinne’s brother, and advised that the stolen property would be returned if the criminal charges were dropped.
Kevin Williams had previously been called by the prosecution. He admitted having spoken with Mrs. Ware, but he refused, invoking the Fifth Amendment, to testify about what he had said to Mrs. Ware and when the conversation had taken place.
Appellant argues, in this assignment of error, that the trial judge should not have allowed Mrs. Ware to say what Kevin had told her. Williams cites LSA-R.S. 15:434 and also State v. Arnold, 367 So.2d 324 (La.1979), and State v. Arbuthnot, 367 So.2d 296 (La.1979), two cases saying that hearsay testimony is unfair because it permits introduction of out-of-court statements which cannot be tested by cross-examination of the alleged declarant.
The obvious intent of Mrs. Ware’s testimony, appellant contends, was to show that someone close to Antoinne Williams knew where the stolen property was and that it could possibly be returned.
The trial judge sanctioned the questioning of Mrs. Ware, saying (1) that Kevin Williams was hostile, (2) that the State had been taken by surprise by his refusal to testify regarding his conversation with Mrs. Ware and (3) that the testimony of this witness could therefore be impeached. The trial judge also cited LSA-R.S. 15:492 as authorization for Mrs. Ware’s testimony. The statute reads:
“When the purpose is to show that ... the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, *630 interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.”
(Underlining provided.)
LSA-R.S. 15:493 is as follows:
“Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement,, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.”
(Underlining provided.)
While Kevin Williams did not admit bias or interest, he was the defendant’s brother and he did go to the Ware residence where the conversation between him and Mrs. Ware took place.
The effect of Mrs. Ware’s testimony could have been limited had the trial judge instructed the jury that the testimony was for impeachment only and was not substantive evidence of Antoinne Williams’ guilt. In the past, the failure to give such an instruction was reversible error. See State v. Barbar, 250 La. 509, 197 So.2d 69 (1967). However, in State v. Ray, 259 La. 105, 249 So.2d 540 (1971), the Supreme Court of Louisiana said:
“This case exposes the weakness of our procedural rule that allows a defendant to avail himself of the lack of the cautionary instruction, though he remained silent and made no specific request to the trial judge for the instruction. This no-request rule creates a trap for the unwary judge to the prejudice of the fair and efficient administration of justice. “The requirement of such a request to avoid waiver and warrant appellate enforcement has ample support in the jurisprudence of other states. ... It is based upon the sound principle that the defendant should make known to the trial judge his desire for such a cautionary instruction and afford him an opportunity to give it.
“Accordingly, in cases tried hereafter, we shall require a defendant to specifically request the trial judge to give such a limiting instruction in order to avail himself of its omission.
Then, in State v. Williams, 445 So.2d 1171 (La.1984), the Supreme Court stated:
“The prior inconsistent testimony is relevant only to the witness’ credibility and is not to be used as substantive evidence of the defendant’s guilt. The defendant is entitled to a limiting instruction regarding the use of the statement, but must request such a statement from the court... The defense must request the limiting instruction, or he will have waived his objection.”
Here, defense counsel did not request a charge that would have diminished the effect of Mrs. Ware’s testimony.
Considering the totality of testimony and evidence adduced at appellant’s trial, we cannot say that Mrs. Ware’s statements, even if improperly allowed by the trial judge, contributed in any meaningful way to the conviction. The jury heard two of the victims make strong, positive identifications of appellant and the third victim was “pretty sure” the gunman was Antoinne Williams.
Also in the record is the testimony of police officer Kenneth Anderson, who said that he approached appellant and another suspect on the night of the armed robbery and “... they turned and ran ...” In his charge, the trial judge correctly instructed the jury that flight could be considered as evidence of guilt.
This second assignment of error by appellant has some validity but not enough to reverse his conviction.
ASSIGNMENT NO. 3
Williams asserts in this assignment of error that the State failed to call City of Kenner police sergeant James Gallagher, who had been involved in the investigation and who had taken steps toward the obtain *631 ing of a search warrant; and that the failure to produce this witness justified a jury charge in line with LSA-R.S. 15:432, which reads:
“A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it pre-ex-isted; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth.”
The defense request for this jury charge was oral and was not made until after closing arguments.
The State’s position is that Gallagher was not under its control and that this witness could have been subpoenaed by the defense as well as by the prosecution. Therefore, the R.S. 15:432 presumption does not apply. In State v. Simms, 381 So.2d 472 (La.1980), the Supreme Court of Louisiana noted:
“The presumption of ... R.S. 15:432 does not arise if the witness is equally available to both the state and the defense ... for then the evidence is not ‘under the control of’ either party.”
Gallagher was subpoenaed prior to trial by the State but, he (Gallagher) was not believed to be a critical witness. He was released to go on his honeymoon. The defense requested an instanter subpoena during a lunch break while the trial was in progress, but obviously Gallagher was then unavailable. In any event, the jury was made aware of Sergeant Gallagher’s participation in the investigation by and through the testimony of other policemen.
Defense counsel, in his closing argument, said:
“There was testimony that a search warrant was sought but nothing was produced to you in the courtroom. We dont’ even know if that search was executed from the testimony because Sergeant Gallagher is not here. He was the leading case officer that investigated this case that was trying to get the search warrant and he’s not here. I don’t know why the State didn’t produce him.”
In rebuttal, the prosecutor explained that while many police officers take part in criminal investigations, only those with crucial testimony are called as witnesses.
In view of the jury’s knowledge of the pros and cons of Sergeant Gallagher’s failure to testify, we cannot say that the refusal to give the requested charge contributed to the guilty verdict. A conviction should not be reversed because of any mistake or irregularity which does not affect substantial rights of the accused. See LSA-C. Cr.P. art. 921 and Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), wherein the Supreme Court of the United States stated:
“... If, when all is said and done, the court[2] is sure that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand ...”
Here, if the trial judge erred in not reading the orally and belatedly requested jury charge, the effect, if any, was miniscule and the error, if any, harmless.
ASSIGNMENT NO. 4
Following a two-day hearing after appellant’s conviction, the trial judge found Williams to be a second offender and sentenced him in accord with LSA-R.S. 15:529.1. This statute allows the trial judge to sentence a second offender "... *632 for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction ...” Williams had pled guilty to two counts of simple burglary in 1978.
In this assignment of error, appellant contends that he was not a true repeat offender as his previous pleas were faulty. The State, it is alleged, did not prove that Williams knew of his right to stand trial without being forced to testify against himself. Appellant cites State v. Robicheaux, 412 So.2d 1313 (La.1982).
To show that Williams’ prior pleas were legal and that he had freely and knowingly waived his right to stand trial without being compelled to testify against himself, along with other rights, the prosecution produced:
(1) The Boykin[3] waiver form signed by Williams and his attorney;
(2) Deputy Michael Boling, an expert in fingerprinting who testified that the prints on the back of the 1978 arrest register sheet matched those of Williams taken upon his arrest for the instant armed robbery; and
(3) Certified copies of the 1978 arrest register and certified copies of the minute entry and commitment from the appropriate district court, said minute entry indicating that Williams, represented by counsel, had pled guilty to two counts of simple burglary.
After considering the State’s evidence, the trial judge said:
“Mr. Williams, the State has filed a multiple bill against you. ... the record from Division ‘B’, wherein you pled guilty to the crime of simple burglary, count one and two, which the plea occurred on November the 28th, 1978, Boy-kin form being in the record executed by both yourself and your attorney and the minute entry showing that you were advised of all of your constitutional rights, certainly would seem to indicate that your plea in that particular situation was freely and voluntarily entered so it is very minimum you were a double offender.”
The prosecution, at the multiple offender hearing, presented its evidence concerning the 1978 pleas despite the fact that it contends the appellant, not the State, was saddled with the burden of proof. The prosecution cited State v. Martin, 427 So.2d 1182 (La.1983), decided after State v. Robicheaux, supra.
Regardless, the record fully supports the trial judge’s determination that Williams, in 1978, had freely, voluntarily and knowingly waived all of his constitutional rights, particularly his right to a trial without being obligated to testify therein.
We note, finally, that the transcript of the 1978 plea colloquy does not appear in the record, the trial judge apparently not having access to the transcript during the multiple offender hearing. However, a plea transcript is not vital in deciding the validity of the plea. In State v. Halsell, 403 So.2d 688 (La.1981), the Supreme Court stated:
“While it is preferable for the trial judge to conduct a colloquy with the defendant to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea.”
In State v. Tucker, 405 So.2d 506 (La.1981), the Supreme Court found that a minute entry concerning an abbreviated plea colloquy along with a well executed waiver of rights form constituted a sufficient showing of a valid Boykin waiver. See also State v. Bland, 419 So.2d 1227 (La.1982), and State v. Dunn, 390 So.2d 525 (La.1980).
For the foregoing reasons, we affirm Williams’ convictions and sentences.
AFFIRMED.

. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. The word "conviction” is inadvertently used in the opinion rather than "court”.

. See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).