WATSON, Justice.*
Defendant Antoinne Williams was convicted on three counts of armed robbery in violation of LSA-R.S. 14:64.[1] As an habitual offender, he was sentenced to 198 years at hard labor on each of the three counts without benefit of parole, probation, or suspension of sentence.[2] The convictions were affirmed[3] and a writ was granted to consider the judgment.[4]
ISSUE
The serious issue prompting this review is whether reversal is required by the admission of testimony from the mother of a victim about Antoinne Williams’ brother offering return of some of the stolen goods if the charges were dropped.
FACTS
Defendant was charged with the armed robbery on September 4, 1984, of John E. Ware, Jr., Michael Digiacomo, and David R. Blache.
Antoinne “Twine” Williams[5] had been in the company of two black friends, Paul “Hobo” Wells[6] and Rickey Seabury. On the afternoon of the robbery, the three white victims drove into the Lincoln Manor subdivision of Kenner in the John Ware car and encountered the black group. From their joint attendance at Bonnabel High School, driver John knew Rickey Seabury by sight. David and Michael bought two marijuana cigarettes from Rickey. Shortly afterward, Michael complained that the “weed”[7] had too many stems and seeds. When they returned to the corner where they had made the purchase, the three black youths got in the back seat of the car while the three white boys remained in the front. Seeking another seller, they drove to what was said to be his grandmother’s house, where Antoinne went inside and re *1378 turned, saying he was not there. They were then directed to a location on Thirty-first Street. After John turned off the engine and lights, Antoinne got out of the back seat and thrust a nickel plated, snub nosed, thirty-eight pistol through the open window against the left temple of driver John. Antoinne demanded all their money and jewelry. Telling Antoinne not to shoot them, “Hobo” and Rickey took a small amount of money out of Michael and David’s pockets. Antoinne yanked Michael’s necklace off the latter’s neck; it was worth about one hundred dollars; Michael’s watch, valued at sixty dollars, was also taken. David was robbed of a gold earring and gold cross, John lost his car radio, valued at over one hundred dollars.
Taking all the proceeds and telling “Hobo” and Rickey to watch the victims, Antoinne unloaded his gun and ran down Thirty-first Street. When the robbery occurred, it was between 7:30 and 8:00 P.M., just getting dark.
Michael and David did not intend to tell their parents anything about the incident, but John Ware’s father called the police and picked up Michael and David to report the robbery which took place in the parking lot of some apartments in the Lincoln Man- or subdivision.
After Officer Hilbert of the Kenner police department was advised by John E. Ware, Jr., and his father that the robbery had taken place, he broadcast a description of the perpetrator which fit Antoinne Williams. The wanted man was described as twenty-four to thirty years old, black, wearing cut-off, bluejean type pants, a colored T-shirt and a “B-Bop hat”.[8] In addition, Antoinne was said to be short, around five feet five inches tall and skinny.
Another police officer, Kenneth Anderson, was told that the wanted man might be found in the company of Paul “Hobo” Wells on Thirty-first Street. At approximately 8:30 P.M., “Hobo” was seen on that street walking east in the company of Antoinne and Rickey. When Officer Anderson started to stop his car, the three began running.
“Hobo” was stopped, gave a statement and then went to the police department to make a written statement. Since that time, Paul “Hobo” Wells has been killed. An-toinne Williams was arrested about midnight on the corner of Albany and Thirty-first Streets.
At a photographic lineup, about 9:00 P.M. that evening, Michael told the police Antoinne Williams was one of two men in four photographs, and then identified him in court. Although he had only caught glimpses of Antoinne, Michael was fairly positive that his courtroom identification was correct.
David was shown five photographs of black males and picked out three. To him, they looked very much alike, and he told the police it was one of the three. However, he was positive in his courtroom identification.
John Ware, Jr., a junior at Bonnabel High School, identified Antoinne Williams in court as the man who had robbed him at gunpoint in the Lincoln Manor area of Ken-ner on September 4,1984. John is familiar with guns because he owns a thirty-eight caliber pistol.
David also testified that he knows guns, can tell a real gun from a fake gun, and was certain that Antoinne had a nickel plated thirty-eight.
In lieu of filing a discovery motion, the defense attorney had reviewed the district attorney’s file, but it did not contain any information about the photographic identifications and defense counsel moved for a mistrial, which was denied.
Kevin Williams, Antoinne’s brother, was called to testify for the state. Although he was Antoinne Williams’ brother, they had never discussed this crime, and he had never seen any of the stolen items in his brother’s possession. Kevin refused to say under what circumstances he had ever talked to John Ware’s mother.
Mrs. Cheryl Ware, John Ware’s mother, testified that her son came home from the robbery shaking and crying. According to her testimony, Kevin Williams asked if she *1379 would consider dropping the charges against his brother if the stolen merchandise were recovered.
A unanimous jury found Antoinne guilty on all three charges of armed robbery. After a sentencing hearing, the maximum penalty was imposed on each count because defendant had pled guilty on November 28, 1978, to two counts of simple burglary, for which he had received concurrent sentences of five years. Thus, defendant was at least a double offender, who had also been sentenced in 1976 to three years at hard labor for simple burglary, was released in 1978, and then pleaded guilty to the two 1978 burglaries. The trial court found Williams posed an undue risk to society. Because of his lack of rehabilitation, need of correctional treatment and a custodial environment, the court concluded there was no reason for leniency.[9]
On appeal, the convictions and sentences were affirmed.[10] The court of appeal correctly concluded that Williams had a fair trial despite lack of prior knowledge of the photographic lineups. The circumstances were presented to the jury, and there is no showing of prejudice. The court of appeal also correctly found that the state had carried its burden of showing a voluntary, free and knowing waiver of Williams’ constitutional rights in connection with his 1978 pleas. The only serious issue presented is the prejudicial effect of Mrs. Ware’s testimony about what she was told by Kevin Williams.
LAW
When a foundation is laid connecting the accused with an attempt to influence witnesses or fabricate evidence, State v. Graves, 301 So.2d 864 (La., 1974) holds evidence of such an attempt is permissible despite its prejudicial effect. In Graves evidence of an attempt by defendant’s wife to obtain false alibi witness testimony was allowed to show consciousness of guilt on the part of defendant.
LSA-C.Cr.P. art. 921 provides:
“A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.”
CONCLUSION
Defendant’s brother Kevin testified that he acted entirely on his own, without any knowledge of his brother’s guilt or any authorization from his brother, in contacting Mrs. Cheryl Ware. Kevin’s testimony was that Antoinne was completely unaware of this effort on his behalf; that Kevin did not know whether or not Antoinne was guilty; and the two had never conferred about the matter. Because there was no foundation laid for admission of the evidence, it was improperly allowed under the guidelines established in State v. Graves, supra.
Since the three eye-witness victims of the armed robbery had ample time to observe Antoinne Williams and made convincing identifications of him at trial, the jury would undoubtedly have found him guilty despite admission of the prejudicial evidence. Under these circumstances the error was harmless. LSA-C.Cr.P. art. 921. The convictions and sentences are affirmed.
AFFIRMED.

 Pike Hall, Jr., Chief Judge of the Court of Apj, peal, Second Circuit, participated in this decision in place of Lemmon, J.

. LSA-R.S. 14:64 provides:
"A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immedical control of another, by use of force or intimidation, while armed with a dangerous weapon.
"Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.”

. The trial court concluded that, at the minimum, he was a double offender, but was not totally satisfied that the Boykin colloquy on a prior offense was valid and did not find Williams to be a third offender.

. State v. Williams, 483 So.2d 626 (La.App. 5 Cir., 1986).

. 491 So.2d 12 (La., 1986).

. Tr. 18.

. Tr. 15.

. Tr. 37.

. Tr. 14.

. LSA-R.S. 15:529.1.A(1) provides:
"A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
"(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction; * * * ”

. 483 So.2d 626 (La.App. 5 Cir., 1986).