514 So.2d 741 (1987)
STATE of Louisiana, Appellee,
v.
Darrell BAILEY, Appellant.
No. 19,079-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
William Rick Warren, Indigent Defender Bd., Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Henry N. Brown, Jr., Dist. Atty., L. Charles Minifield, Asst. Dist. Atty., Minden, for appellee.
Before MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
The defendant Bailey was found guilty by a jury, as charged, of simple burglary *742 (R.S. 14:62). After consideration of a presentence report, the trial judge sentenced the defendant to prison for 30 months.
The defendant appealed, contending 1) the trial judge erred in admitting testimony concerning restitution made to the victim by the defendant's mother and 2) there was insufficient evidence to convict the defendant.
On January 18, 1986 at about 4:45 A.M., Charles Phenix was standing next to Hammonds Mercantile Store on Maiden Lane in Minden. Phenix was near the Lucifer Club and was in a well-lit area. At this time Phenix saw an individual, whom he would identify as Darrell Bailey, leave the Lucifer Club with a sack in his hand. Phenix had known Bailey for some five or six years.
Thinking that the club might still be open, Phenix went over to see if he could get in. Once there, Phenix observed that the door was slightly ajar, but that all the lights were off. Phenix then went next door to the pool hall and told Wyomie Baker that the club had apparently been broken into. The two went over to the club to investigate and then contacted Jimmy Wattree, who operated the club.
Based upon information provided by Phenix, Wattree went to the home of Darrell Bailey at approximately 5:15 A.M. The door was opened by Darrell's brother, Carl. Wattree saw Darrell Bailey lying on a couch wearing a maroon sweater. Darrell Bailey was subsequently charged with simple burglary of the club.
Phenix testified that he could positively identify Darrell Bailey as the individual he observed leaving the Lucifer Club. Wearing a camouflage jacket, Bailey exited the club walking and was out-of-sight after he took two or three steps. Phenix said he had seen Darrell earlier that night wearing the camouflage jacket.
Wattree testified he never gave permission to Darrell Bailey to enter the Lucifer Club at the time in question. Wattree further asserted that a carton of drinks, four or five cartons of cigarettes and a ladies billfold were discovered to be missing after the burglary.
Defendant's brother, Carl, testified he saw Darrell at about midnight on the night in question on East Union Street wearing a maroon sweater, and later saw Darrell at their home at approximately 3:15 A.M. Carl said he talked to his brother for some 30 minutes and his brother then went into the house. Carl went in about 15 minutes later and found Darrell asleep on the couch. Carl testified he went to sleep at approximately 4:30 A.M. Carl said that he owned a camouflage jacket but denied that Darrell possessed a jacket of that description.
Defendant's mother, Lennie Bailey, testified she saw him at about 8:00 or 9:00 P.M. on the night in question and her son had on a maroon sweater. Sometime during that night she got out of bed and saw Carl and Darrell asleep in the living room. Since the television was still on, she went to switch it off but first turned to the "time" channel and noted that it was 4:19 A.M. She returned to bed, where she remained until being awakened by Wattree.
While Wattree, the manager of the burglarized club, was on the witness stand, being questioned by the prosecutor, the following colloquy took place:
Q And I believe you just testified that none of these items was ever returned to you, is that correct?
A Right.
Q Did anybody ever pay you for these items?
A Yes.
Q Who?
MR. WARREN: Your Honor, I'm going to object.
A Darrell's mother.
MR. WARREN: I'm going to object to that question and would like to approach the bench.
THE COURT: All right.
The ruling of the trial court on the defendant's objection was as follows:
THE COURT: I don't know whether the question, borderline question whether it's allowable or not, the question's been asked and it's been answered, am I right? We won't pursue it any further, *743 we won't repeat it. We'll let it go as what it is right now and I will not admonish the jury or anything.
Considering the answer volunteered by Wattree to the question posed, that question was obviously irrelevant. Defense counsel properly objected to protect the interest of his client. The witness apparently ignored that objection and blurted out the answer.
To protect defendant from prejudicial remarks by a witness, defense counsel must either request from the trial court an admonition to the jury or a mistrial. La.C.Cr.P. Art. 771(2). In this case defense counsel requested that the question be "stricken". In light of the volunteered answer, this should have been viewed as a request for an admonition to the jury to disregard the question and the answer. If the defendant makes known to the trial court the action he desires the court to take and the grounds therefor, this is sufficient to preserve the error on appeal. La.C.Cr.P. Art. 841: State v. Vanderpool, 493 So.2d 574 (La.1986).
The question here is whether the failure by the trial judge to admonish the jury deprived the defendant of a fair trial.
The test for harmless error established in State v. Gibson, 391 So.2d 421 (La.1980) was adopted from Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and consists of a two prong analysis:
1) the reviewing court must ask whether there is a reasonable possibility that the error complained of might have contributed to the conviction, and
2) the court must be able to declare a belief that the error was harmless beyond a reasonable doubt.
In later cases, the Supreme Court suggested that the reviewing court ask whether overwhelming evidence to support the jury's verdict remains once the erroneously admitted error is disregarded; that there is no reasonable doubt the jury would have reached the same verdict without hearing the erroneous evidence. Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). The focus is on the impact of the error.
This requires that we consider the issue of sufficiency of evidence. Phenix testified that the area around the Lucifer Club was well-lit and that he could clearly see the defendant, whom he had personally known for several years. According to Phenix, Bailey was wearing the same clothes as earlier in the evening.
In the exercise of its proper function, the jury evaluated the testimony of the witnesses and apparently determined that Phenix was more credible than defendant's mother and brother. Since there was credible evidence to convict the defendant without admission of the prejudicial testimony, the failure of the trial court to admonish the jury to disregard the testimony is harmless error.
In State v. Williams, 497 So.2d 1376 (La.1986), a mother offered to make restitution by returning the stolen items. Admission of this testimony was not deemed to be reversible error since, concluded the court, there was no reasonable belief that the offer of restitution contributed to the conviction. We reach the same conclusion in this case.
Viewing the evidence in a light most favorable to the prosecution, we find there was sufficient evidence to convict the defendant of simple burglary.
For these reasons, the defendant's conviction is affirmed.