583 So.2d 42 (1991)
STATE of Louisiana, Appellee,
v.
Frank James CASTON, Appellant.
No. 22513-KA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
Writ Denied September 27, 1991.
*43 Theo J. Coenen, III, Rayville, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., Penny Wise-Douciere, Asst. Dist. Atty., Rayville, for appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
*44 LINDSAY, Judge.
The defendant, Frank James Caston, was convicted of first degree murder in the killing of a deputy sheriff. Pursuant to the jury's recommendation, he was sentenced to life imprisonment, without benefit of probation, parole, or suspension of sentence. The defendant appeals. For the reasons assigned below, the defendant's conviction and sentence are affirmed.

FACTS
In late April and May of 1988, the defendant, his younger brother Sonny, and Frank Bancroft shared a cell in the West Carroll Parish Jail in Oak Grove, Louisiana. During this time, the men discussed escaping. Thereafter, Bancroft became a trustee with greater freedom to move about the jail. Bancroft utilized his position as a trustee to supply the Caston brothers with a knife, a chisel and a hacksaw blade. (However, the knife was discovered and confiscated.) On June 14, 1988, Bancroft was released from the jail.
On the night of June 18, 1988, Bancroft stole his stepfather's truck and shotgun and left a suicide note at his mother's house. He then went to the jail, where he visited with Deputy Sheriff Jeffrey Gathings, who was serving as the radio operator and night shift jailer. Bancroft also assisted a trustee in repairing an air conditioning unit.
Bancroft went back to the Castons' cell several times that night. He informed them that he was going to help them escape. They discussed various ways to incapacitate Deputy Gathings. Among the methods suggested was striking him in the head with a cotton picker spindle welded to a steel bar (which was used in the jail as a hammer and which Bancroft had obtained from the jail storage room) or with a hatchet. They also discussed using a shotgun.
Apparently, Bancroft returned to his truck and retrieved the shotgun. He then went into the radio room where he shot Deputy Gathings in the head, killing him. (The contact wound on the left side of the deputy's mouth indicated the shotgun was held directly against his skin.) Bancroft then locked the trustees in their cell and freed the Caston brothers. The defendant obtained the shotgun from Bancroft and led the way as the three men fled from the jail.
The authorities were alerted to the escape after the trustees persuaded the two prisoners left behind in the Castons' cell to leave the unlocked cell and phone for help. A massive manhunt ensued.
On June 20, 1988, Bancroft was arrested. Later that day, the Castons surrendered to the authorities in Lake Providence, Louisiana. The prisoners' statements led to the recovery of the murder weapon from a ditch and to the discovery of the hatchet and cotton picker spindle behind the air conditioner at the jail.
A search of the jail cell formerly occupied by the defendant and his brother revealed a hacksaw blade and chisel under a bunk mattress. The officers also found a drawing on the wall near this bunk. The drawing, entitled "Heavenly Out-Laws Grave-Yard," and "James Gang", depicted a graveyard with several tombstones bearing the first names of Bancroft, the defendant, his brother Sonny, and another Caston brother who was incarcerated elsewhere.
The defendant was indicted on charges of first degree murder, aggravated escape, conspiracy to commit first degree murder, and conspiracy to commit aggravated escape. On May 15, 1990, the defendant's motion for a change of venue was granted. The case was transferred from West Carroll Parish to Richland Parish.
Subsequently, the defendant filed a pretrial motion for individual, sequestered voir dire examination of prospective jurors. He alleged that such examination was required because of the presence of special circumstances: it was a capital case and Deputy Gathings' death had provoked great community outrage, which was further inflamed by the actions of law enforcement officers. On May 23, 1990, the trial court ruled that, while it would grant the motion to some extent, a final ruling would be made before commencement of trial. On *45 May 29, 1990, jury selection began. The trial court granted the motion in part, limiting voir dire examination to six prospective jurors at a time.
On May 31, 1990, the jury unanimously convicted the defendant of first degree murder and recommended that he be sentenced to life imprisonment, without benefit of probation, parole or suspension of sentence. The defendant was formally sentenced on June 6, 1990.
This appeal followed. The defendant assigned as error the following: (1) the trial court erred in refusing to grant the defendant's motion for individual, sequestered voir dire; and (2) the trial court erred in admitting into evidence the drawing found in the defendant's cell.

VOIR DIRE
The defendant contends that the trial court abused its discretion by refusing to grant his motion for individual, sequestered voir dire examination of the prospective jurors.
There is no provision in our law which either prohibits or requires the sequestration of prospective jurors for an individual voir dire. The manner in which the veniremen are called and the scope of examination are left to the court's discretion. LSA-C.Cr.P. Art. 784, Comment (c); State v. Comeaux, 514 So.2d 84 (La.1987); State v. Copeland, 530 So.2d 526 (La. 1988), execution warrant vacated 532 So.2d 1385 (La.1988), cert. denied 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989), rehearing denied 490 U.S. 1077, 109 S.Ct. 2092, 104 L.Ed.2d 655 (1989). A trial court has the discretion to permit individual voir dire if a defendant can demonstrate that special circumstances are present. Absent special circumstances, the trial court does not err in refusing requests for individual voir dire. Comeaux, supra; Copeland, supra. The fact that a case is a capital case does not in and of itself establish the existence of special circumstances. State v. Wingo, 457 So.2d 1159 (La.1984), cert. denied 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985); Comeaux, supra; Copeland, supra.
The defendant has failed to demonstrate "special circumstances" requiring individual voir dire in this case. The fact that it was a capital case alone did not establish special circumstances. Nor was there a showing of undue publicity concerning the case in Richland Parish, where the trial was held almost two years after the murder. A change of venue was granted from West Carroll Parish, thereby removing the defendant's case from the community in which it arose and where presumably the greatest degree of publicity would have been concentrated. There is no evidence in the record establishing what, if any, publicity there was in Richland Parish concerning this crime.
Furthermore, the trial court took appropriate measures to safeguard the defendant's interests. The court granted the defendant's motion in part, limiting voir dire to six prospective jurors at a time. A similar approach was utilized in State v. Comeaux, supra, in which voir dire was conducted in panels of six or less in a capital murder trial for which a change of venue was denied. There, the Supreme Court found no error in the manner in which voir dire was conducted.
Finding no abuse of discretion by the trial court, we find that this assignment of error is without merit.

ADMISSIBILITY OF DRAWING
The defendant argues that the trial court erred in admitting into evidence the "Heavenly Out-Laws Graveyard" drawing found in his cell. (As previously noted, this drawing depicted a graveyard with tombstones inscribed with the first names of Bancroft, the defendant, Sammy Caston, and another Caston brother.) The defendant contends that the state failed to lay a proper foundation for its admission into evidence because it did not authenticate or identify the drawing. Also, he argues that the exhibit was not relevant, or, alternatively, if the drawing was relevant, that its probative value was substantially outweighed by the danger of unfair prejudice.

*46 Relevance

LSA-C.E. Article 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Article 402 generally provides for the admissibility of all relevant evidence unless legislatively or constitutionally prohibited. Article 403 allows exclusion of relevant evidence in cases where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Since the defendant did not fire the shot which killed Deputy Gathings, the state was required to prove that the defendant was a principal to the first degree murder of the deputy and that he had the specific intent to kill the victim. See LSA-R.S. 14:24 and 14:30; State v. Brooks, 505 So.2d 714 (La.1987), cert. denied 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), rehearing denied 484 U.S. 1021, 108 S.Ct. 737, 98 L.Ed.2d 684 (1988). The drawing was offered as relevant evidence of the defendant's relationship with Bancroft, the actual triggerman, to show that the defendant and Bancroft acted in concert in planning the escape and the murder of Deputy Gathings. Testimony shows that the defendant, Sonny Caston and Bancroft discussed, before the killing, how to attack Deputy Gathings and what weapon should be used. The drawing demonstrates a feeling of closeness between the Caston brothers and Bancroft, who returned after his release from jail to free them. The drawing did not include the names of the other two non-related occupants of the cell (who did not flee with the Castons and Bancroft even though they were left in an unlocked cell).
Although the evidence did not establish when the drawing was first displayed in the cell, it was displayed after Bancroft's release. Furthermore, the drawing was located on the cell wall near the defendant's bed. Therefore, we find that the drawing was relevant because the drawing tended to increase the likelihood that the defendant was a principal to first degree murder because he aided in the killing of the deputy.

Authentication
The general rule of authentication and identification is set forth in LSA-C.E. Article 901(A). It provides that the requirement of authentication or identification is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims."
To admit demonstrative or physical evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony that the object exhibited is the one related to the case. It can also be identified by chain of custody. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Anderson, 554 So.2d 133 (La.App. 2d Cir.1989). Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Landry, 388 So.2d 699 (La. 1980), cert. denied 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981).
Officer Robert Buckley of the Louisiana State Police testified that he discovered the drawing on a wall in the cell in which the defendant, his brother Sonny, and two other inmates were incarcerated on the night of the escape. Officer Buckley admitted that he did not know who prepared or owned the drawing. However, he testified that it was located near the bunk where the chisel and hacksaw blade (supplied to the Castons by Bancroft) were hidden. Furthermore, of the four occupants of the cell, only the names of the Caston brothers were on the drawing.
The state properly laid a foundation for admitting the drawing into evidence. Officer Buckley made a visual identification of the picture as the same one he found in the defendant's cell. Once this foundation was established, it became the province of the jury to determine the weight to be accorded to this evidence.

*47 Undue Prejudice

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. In the instant case, however, the drawing is not unfairly prejudicial to the defendant. While somewhat morbid, the drawing is not inflammatory. Furthermore, its probative value in demonstrating the close relationship between the defendant and Bancroft outweighs any possible prejudice.

Harmless Error
However, even assuming arguendo that there was any error in the admission of this drawing into evidence, we find that it would be harmless error.
The test for harmless error established in State v. Gibson, 391 So.2d 421 (La. 1980) was adopted from Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and consists of a two prong analysis:
1) the reviewing court must ask whether there is a reasonable possibility that the error complained of might have contributed to the conviction, and
2) the court must be able to declare a belief that the error was harmless beyond a reasonable doubt.
In later cases, the Supreme Court suggested that the reviewing court ask whether overwhelming evidence to support the jury's verdict remains once the erroneously admitted error is disregarded; that there is no reasonable doubt the jury would have reached the same verdict without hearing the erroneous evidence. Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). The focus is on the impact of the error. [Emphasis theirs]
State v. Bailey, 514 So.2d 741, 743 (La. App. 2d Cir.1987).
The record contains overwhelming evidence of the defendant's guilt as a principal to the crime of first degree murder. The defendant participated in the discussion with Sonny and Bancroft as to different methods by which they could attack Deputy Gathings as part of their aggravated escape. The deputy's death was clearly contemplated in the course of their conversation. Following the murder, the defendant, Sonny, and Bancroft, the actual killer, fled from the scene of the murder with the defendant armed with the murder weapon. The defendant and his brother did not surrender to the authorities until after Bancroft had already been captured and the Castons' capture was virtually certain due to the large number of law enforcement officials seeking them. Also, there was evidence of the defendant's lack of remorse over the death of Deputy Gathings and his boast to a jail trustee that he and his brother were "cop killers."
Furthermore, the evidence was such that the jury could have reasonably discerned the close relationship between the defendant and Bancroft through other evidence. In particular, we refer to Bancroft's actions in risking his position as a trustee to bring weapons and tools to the defendant and his brother and in later risking his freedom, if not his life, to return to the jail after his own release in order to free them.
Based on the foregoing, we find no merit to this assignment of error.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.