STATE OF LOUISIANA
v.
MICKELL ALLEN CALVERT
No. 2007 KA 1910.
Court of Appeals of Louisiana, First Circuit.
June 6, 2008.
WALTER P. REED, District Attorney Franklinton, LA, and KATHRYN LANDRY, Asst. District Attorney Baton Rouge, LA, Attorneys for State-Appellee.
JANE L. BEEBE NEW ORLEANS, LA, Attorney for Defendant-Appellant MICKELL ALLEN CALVERT.
Before: CARTER, C.J., PETTIGREW and WELCH, JJ.
WELCH, J.
The defendant, Mickell Allen Calvert, was charged by bill of information with sexual battery (four counts), violations of La. R.S. 14:43.1. The defendant pled not guilty. After a trial by jury, the defendant was found guilty as charged on count one, guilty of the responsive offense of attempted sexual battery (in violation of La. R.S. 14:43.1 and La. R.S. 14:27) on counts two and three, and guilty of simple assault (a violation of La. R.S. 14:38) on count four. The trial court denied the defendant's motion for new trial and motion for post verdict judgment of acquittal. The defendant was sentenced to ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count one; to five years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count two; to five years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count three; and to six months in parish jail on count four. The trial court ordered that the sentences be served concurrently. The trial court denied the defendant's motion to reconsider sentence. The defendant now appeals, raising the following assignments of error:
1. The prosecutor made an impermissible reference to the defendant's failure to make a statement to the police.
2. The trial court erred in allowing evidence of other crimes.
3. The evidence was insufficient to support the convictions.
4. The trial court imposed an excessive sentence.
For the following reasons, we affirm the convictions as to all counts; affirm the sentences in counts one, two, and three; and amend the sentence as to count four and affirm as amended.

STATEMENT OF FACTS
The defendant and his wife lived in one half of a duplex apartment building while the victim (A.H.)[1] and her mother lived in the adjacent section. The victim's mother was closely acquainted with the defendant and his wife and trusted them. She would occasionally leave the victim in the duplex and trusted the defendant to supervise her. The victim was nineteen years of age at the time of the trial. The incidents in question occurred when she was about fifteen years of age.
At trial, the victim detailed four incidents involving the defendant that occurred on occasions when the victim was left alone at the duplex. According to the victim, the defendant employed force in his physical contact with the victim on those occasions. The victim ultimately disclosed some of the details to her mother. The incidents were reported and the victim was interviewed at the Children's Advocacy Center (CAC) in Covington, Louisiana.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the defendant argues that the prosecutor made an impermissible reference to the defendant's failure to make a statement to the police. The defendant further argues that the prosecutor's prejudicial conduct mandates a mistrial pursuant to La. C.Cr.P. art. 770. The defendant specifically quotes subsections (2) and (3). The defendant also argues that the trial court erred in issuing an admonishment without a request to do so. The defendant contends that the trial court erred in denying the motion for mistrial and the motion for new trial on this basis.
The trial court may grant a mistrial for certain inappropriate remarks that come within La. C.Cr.P. art. 770, which provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense ...
.... An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Otherwise, an admonition to the jury may suffice, as provided in La. C.Cr.P. art. 771:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and warranted only when substantial prejudice will otherwise result to the accused to deprive him of a fair trial. State v. Booker, XXXX-XXXX, pp. 17-18 (La. App. 1st Cir. 2/14/03), 839 So.2d 455, 467, writ denied, XXXX-XXXX (La. 10/31/03), 857 So.2d 476. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518, p. 12 (La. 1/17/01), 776 So.2d 443, 454.
As noted by the defendant on appeal, the prosecutor stated the following during the opening statement:
At that point, Lieutenant Adams made an arrest of the defendant, Mickell Calvert. When he made the arrest, as you can imagine, Mickell Calvert denied it. But he made a statement that struck Lieutenant Adams as very strange, and not the sort of statement that an innocent man would make.
. . . When Lieutenant Adams said, would you like to make a formal statement that's recorded, the defendant realized how bad that statement sounded and he refused to make a statement.
The defense attorney objected and moved for a mistrial. The trial court sustained the objection but denied the motion for mistrial. The trial court further instructed the prosecutor to discontinue any reference to the absence of a recorded statement and admonished the jury to disregard any reference by the prosecutor to any motives as to why a recorded statement was not taken. The defendant also mentions testimony by State witness Lieutenant Scott Adams of the Bogalusa Police Department regarding the defendant's verbal statements and refusal to give a recorded statement. Specifically, the State questioned Lieutenant Adams as to what specific rights the defendant was informed of and as to whether the defendant made any statements after being informed of his rights and the nature of the allegations. According to Lieutenant Adams, though the defendant denied having sex or any contact with the victim, the defendant stated that he thought about having sex with her but did not do so because her vagina "smelled too bad." The State then asked if the defendant made a recorded statement, and Lieutenant Adams testified that the defendant refused to do so. The defense attorney did not object to this testimony.
Opening and closing arguments in criminal cases shall be limited to the evidence admitted, the lack of evidence, conclusions of fact that may be drawn therefrom, and the law applicable to the case. La. C.Cr.P. art. 774. The statement by the prosecutor at issue herein did not constitute a remark or comment on inadmissible evidence of other crimes or on the failure of the defendant to testify at trial. The statement included the State's contention of what forthcoming evidence would show as to post-arrest statements made by the defendant and an attempt to explain the lack of a recording. The remarks at issue were neither irrelevant nor immaterial. In the instant case, a mistrial was not mandated by La. C.Cr.P, art. 770 or La. C.Cr.P. art. 771. We find no error in the trial court's denying the defendant's motions for a mistrial and for a new trial on this basis. We further note that although the above-cited articles mandate an admonishment under specified circumstances upon request, the articles do not prohibit the trial court from admonishing the jury at its own volition. The articles clearly contemplate admonishment as an option to assure the defendant a fair trial where a mistrial is not warranted. Further, after the denial of the motion for mistrial, but prior to the admonishment, the trial court informed the defendant that it would admonish the jury to disregard the comments at issue. The defendant did not object to the trial court's decision to admonish the jury and did not enter an objection following the admonishment. The failure to raise a contemporaneous objection to a ruling of the court constitutes a waiver of that objection. La. C.Cr.P. art. 841. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, the defendant contends that the trial court erred in allowing the admission of a recorded, non-threatening telephone call by the defendant to the victim's mother. The defendant argues that the evidence had no probative value and constituted an unfair implication that the defendant threatened the victim's mother. The defendant concludes that the evidence, even if found relevant, does not meet the balancing test of La. C.E. art. 403.
During the March 27, 2007 hearing[2] on the State's motion to introduce evidence of other crimes pursuant to La. C.E. art. 404(B), the State elicited testimony from the victim's mother to show that the defendant called her during the week before the hearing and claimed that DNA evidence did not prove his guilt and asked that she and the victim or both tell the prosecution that the allegations against him were false.[3] A portion of the defendant's telephone call, before the victim's mother picked up the phone, was recorded by an answering machine. The victim's mother further testified that the defendant had on a previous occasion, over a year before the hearing, threatened to perform "sexual acts and morbid acts" with the victim and further threatened to "slice her [the victim's] throat ... [a]nd then he said he'd kill my husband and me." The victim's mother stated that the threats were reported to the police.
The trial court withheld ruling on the motion pending the State's acquisition of the police report regarding the defendant's prior threats. The trial court instructed the State to not make reference to any evidence of other crimes during the opening statements. The State noted for the record that it intended to introduce evidence regarding the recent phone call and not of prior threats by the defendant. In the midst of the trial, outside of the presence of the jury, the trial court addressed the State's motion. The trial court noted that the defendant called the victim's mother in direct contravention of a condition of his release on bond. The trial court granted the State's motion to introduce evidence of the telephone call and its contents noting that there was a pattern of threats by the defendant and that the evidence was relevant to show the defendant's guilty knowledge and intent. The trial court further noted that it would give a qualifying instruction to the jury. The defense objected, arguing that the testimony did not indicate that a threat was made during the telephone call at issue. During the trial, the victim's mother testified regarding the recent contact by the defendant, and the portion of the telephone call that was recorded on the answering machine was played for the jury.
Generally, evidence of other crimes to prove knowledge, system, or intent is inadmissible when its relevance is outweighed by its prejudicial effect. La. C.E. art. 403. However, evidence of an attempt to influence witnesses or fabricate evidence is admissible despite its prejudicial effect. State v. Graves, 301 So.2d 864, 866 (La. 1974). In Graves, the defendant contended that the trial court erred in allowing introduction of evidence tending to show that he had attempted to influence the testimony of witnesses. The Louisiana Supreme Court upheld the ruling of the trial court, stating: "Although an attempt to bribe or influence a witness is a criminal offense under Louisiana law, La. R.S. 14:118, an attempt by an accused in a criminal prosecution to induce a witness to testify falsely may be introduced in evidence against him." Graves, 301 So.2d at 866. Actions by the defendant that are designed to prevent witnesses from testifying give rise to an inference that the defendant acted from an awareness or consciousness of his own guilt. Such evidence, much like the bribery attempt in Graves, has substantial probative value in a proceeding designed to test the guilt or innocence of an accused. State v. Burnette, 353 So.2d 989, 992 (La. 1977). Accordingly, we find that the trial court did not err in admitting the evidence at issue herein. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
In the third assignment of error, the defendant contends that the evidence was insufficient to support the guilty verdicts. The defendant notes that there was no physical evidence to show that he raped or sexually battered the victim. The defendant notes that by the victim's account of the incidents, she continued to trust the defendant until the fourth incident occurred. The defendant further adds that the four alleged incidents were not specific enough in time and place for the defendant to recount his time and defend himself. The defendant notes that the victim's testimony was the only evidence of the defendant's guilt. Finally, defendant argues that the jury's verdicts show that the victim's credibility was questioned.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the Legislature in enacting La. C.Cr.P. art. 821, is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Brown, XXXX-XXXX, p. 22 (La. 4/12/05), 907 So.2d 1,18. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, XXXX-XXXX, p. 5 (La. App. 1st Cir. 2/14/03), 845 So.2d416,420.
As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Richardson, 459 So.2d at 38. When a case involves circumstantial evidence and the trier of fact reasonably rejects a hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
A.H. testified that she had known the defendant since she was about fourteen or fifteen years of age. Before the incidents in question, the victim considered the defendant a friend and talked to him about her problems. She specifically stated, "I needed someone to watch out for me," and later added, "[a]nd he'd help me get through my problems with everything."
A.H. first described an occasion when the defendant visited her while she was in her apartment alone waiting for her boyfriend to arrive. A.H. eventually fell asleep and the defendant was on top of her when she woke up. A.H. specifically testified, "He was  he raped me down there." When specific details were elicited the victim added, "Well, he was sticking his thing inside of me when I woke up. And I asked him to stop and he wouldn't." According to A.H., after the third or fourth time that she told the defendant to stop, he stopped and left the apartment.
A prior incident occurred when the defendant told her that he was in love with her and wanted to be with her. The defendant kissed her on her neck and she told him to stop. The defendant then forced himself on top of the victim. The defendant left after the victim again told him to stop.
A.H. later went to the defendant's apartment "to apologize . . . for being mean." The defendant told her that he wanted to show her something in his bedroom. As she sat on the bed, the defendant "went down" on her and again forcefully positioned his body over hers. After the victim repeatedly told him to stop, the defendant allowed her to leave. During this incident, according to the victim, the defendant touched her "private area" with his "private area."
The final incident described by the victim occurred when she visited him. The defendant pulled the victim onto his bed and again forcefully placed his body over her body. A.H. testified that she told the defendant no before he forced himself upon her and explained to him that she thought of him as only a friend. The defendant complied with the victim's request that he stop and allowed her to leave the apartment.
The victim also testified that the defendant had threatened to hurt her and her parents if she told anyone about the incidents. She delayed telling anyone about the incidents, as she was afraid to do so. The victim ultimately told her mother that the defendant raped her.
Lieutenant Adams investigated the case involving the instant offenses. Lieutenant Adams testified that the victim's mother contacted the Bogalusa Police Department and complained that an adult male, the defendant, had sex with her juvenile daughter. After a brief interview of the mother and child, the Bogalusa Police Department scheduled the CAC interview. Upon his arrest and after being advised of his Miranda[4] rights (and as heretofore noted), the defendant stated that he thought about having sex with the victim, but "she smelled too bad."
Sexual battery is defined by La. R.S. 14:43.1, in pertinent part, as the intentional engaging in any of the following nonconsensual acts:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
Attempted sexual battery is the commission or omission of an act for the purpose of and tending directly toward the accomplishing of a sexual battery with the specific intent to commit a crime. See La. R.S. 14:27(A). A battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. An assault is an attempt to commit a battery. La. R.S. 14:36.
Herein, the victim detailed four separate incidents wherein the defendant in part penetrated the victim without her consent, forcefully kissed her neck, forcefully touched the portion of her body that she described as private with the portion of his body that she also described as private, and on a final occasion, pulled the victim into his bedroom and forcefully placed his body over her body before complying with her requests to discontinue. The dates of the offenses were not essential elements of the crimes, and courts have recognized that in sexual abuse cases that continue over time, exact dates often cannot be supplied. State v. Balden, XXXX-XXXX, p. 11 (La. App. 5th Cir. 7/29/03), 852 So.2d 1050, 1058; State v. Dixon, 628 So.2d 1295, 1299 (La. App. 3rd Cir. 1993). The jury apparently accepted the victim's testimony. A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La. 1992). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Thomas, 2005-2210, p. 8 (La. App. 1st Cir. 6/9/06), 938 So.2d 168, 174-175, writ denied, 2006-2403 (La. 4/27/07), 955 So.2d 683. Viewing the evidence in the light most favorable to the prosecution, we find that the evidence in the record sufficiently supports the convictions. For the above reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In the final assignment of error, the defendant contends that the sentence imposed on count one is excessive. The defendant contends that the jury rendered a "compromise verdict" and notes his lack of a criminal history. The defendant concludes that the maximum sentence for this conviction is unduly harsh. The defendant does not contest the other three sentences.
Article I, section 20 of the Louisiana Constitution explicitly prohibits excessive sentences. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. See State v. Guzman, 99-1528, 99-1753, p. 15 (La. 5/16/00), 769 So.2d 1158, 1167. The trial court has wide discretion in imposing a sentence within the statutory limits and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Loston, XXXX-XXXX, pp. 19-20 (La. App. 1st Cir. 2/23/04), 874 So.2d 197, 210, writ denied, XXXX-XXXX (La. 9/24/04), 882 So.2d 1167.
Louisiana Code of Criminal Procedure article 894.1 sets forth items that must be considered by the trial court before imposing sentence. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Leblanc, XXXX-XXXX, p. 10 (La. App. 1st Cir. 12/17/04), 897 So.2d 736, 743, writ denied, XXXX-XXXX (La. 4/29/05), 901 So.2d 1063, cert, denied, 546 U.S. 905, 126 S.Ct. 254, 163 L.Ed.2d 231 (2005); State v. Faul, XXXX-XXXX, p. 4 (La. App. 1st Cir. 2/23/04), 873 So.2d 690, 692. Maximum sentences are reserved for cases involving the most serious offenses and the worst offenders. State v. Easley, 432 So.2d 910, 914 (La. App. 1st Cir. 1983).
Prior to sentencing, the victim made a statement informing the court of the impact of the offenses. The victim indicated that she was afraid to leave her home due to the threats made by the defendant. She also stated that she delayed plans to complete her education. In imposing sentence herein, the trial court also considered the sentencing guidelines. The trial court specifically noted that the defendant knew or should have known that the victim of the offenses was particularly vulnerable due to her youth and her previous relationship of trust with the defendant. The trial court further noted that the defendant failed to accept responsibility for his actions. The defendant used his position as a trusted family friend to facilitate the commission of the offenses. The offenses also involved the use of threats and actual violence. Finally, the trial court was mindful of the fact that the defendant violated a condition of his release on bond in contacting the victim's family by telephone, in the week before the trial.
The defendant abused his position of trust. We further consider the fact that the victim's testimony more adequately described nonconsensual sexual intercourse and could have, therefore, supported a conviction for a more serious offense of rape. See State v. Wooden, 572 So.2d 1156, 1161 (La. App. 1st Cir. 1990); State v. Heath, 447 So.2d 570, 577 (La. App. 1st Cir.), writ denied, 448 So.2d 1302 (La. 1984). We find that the record in this case adequately supports the maximum sentence imposed on count one. This assignment of error lacks merit.

REVIEW FOR ERROR
The defendant asks that this court examine the record for error under La. C.Cr.P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under La. C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we note the following sentencing error.[5] The sentence imposed by the trial court on count four, simple assault, is illegally harsh. As previously noted, the trial court imposed a sentence of six months in parish jail on count four. In accordance with La. R.S. 14:38, the maximum term of imprisonment that may be imposed for simple assault is ninety days. Thus, we amend the sentence on count four to ninety days. We remand the matter to the trial court with instructions to amend the sentencing minute entry and criminal commitment to reflect this amendment.

CONCLUSION
For the foregoing reasons, the defendant's convictions as to all counts are affirmed; sentences on counts one, two, and three are affirmed; sentence on count four is amended and affirmed as amended; remanded with instructions.
CONVICTIONS AS TO ALL COUNTS AFFIRMED; SENTENCES IN COUNTS ONE, TWO, AND THREE AFFIRMED; SENTENCE ON COUNT FOUR AMENDED AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] We reference this victim, whose date of birth is May 4, 1986, only by her initials or as "the victim." See La.R.S.46:1844(W).
[2] This hearing was conducted after jury selection, but prior to opening statements.
[3] As noted by the State in its appeal brief, DNA evidence was not taken in this case as Ihere was an extended time period between the occurrence of the crimes and the report of the crimes.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] We also note that the trial court did not observe the three-day delay between conviction and sentence mandated by La. C.Cr.Pr. art. 873. The defendant was convicted by jury trial on March 27, 2007. The next day, March 28, 2007, the trial court denied the defendant's motion for post verdict judgment of acquittal and motion for new trial. The defendant was sentenced on the subsequent day, March 29, 2007. The record is devoid of a waiver of the three-day delay. Nonetheless, Official Revision Comment (a) of that article, in pertinent part, states:" The three-day mandatory delay between conviction and the imposition of sentence is to allow the defendant sufficient time to file his motion for a new trial, which must be filed between verdict and sentence." In this case the defendant had already filed a motion for new trial and a motion for post verdict judgment of acquittal and both motions were denied twenty-four hours before the sentence was imposed. The defendant seemed to indicate his readiness for sentencing. Furthermore, the defendant does not complain about this Article 873 violation.